LEWIS v FARMER JACK DIVISION, INC

Docket No. 65976. Argued November 12, 1981 (Calendar No. 11).—
Decided December 20, 1982.

Herbert S. Lewis brought an action against Farmer Jack Division, Inc., and Borman's, Inc., for damages for false arrest. On the day of the arrest, employees of the defendants summoned the police to a Farmer Jack store and one of them, a cashier, identified the plaintiff as the person who had robbed another of the defendants' stores some five months earlier. The police arrested the plaintiff. At his preliminary examination, the plaintiff offered proof that he was out of town on the day of the robbery, and the case was dismissed. A jury awarded the plaintiff damages, and the Wayne Circuit Court, Irwin H. Burdick, J., entered a judgment on the verdict. The Court of Appeals, J. H. Gillis, P.J., and N. J. Kaufman and R. M. Maher, JJ., reversed in an unpublished opinion per curiam on the grounds that the cashier had merely reported the facts which she believed indicated that a felony had been committed and that the plaintiff was the felon, that she gave the arresting officers a full and fair disclosure of the material facts as she believed them to be, and that the arrest was justified because the cashier had probable cause (Docket No. 45248). The plaintiff appeals.

In an opinion by Justice Levin, joined by Chief Justice Fitzgerald, and Justices Kavanagh, Coleman, and Ryan, the Supreme Court *held:*

The evidence did not establish a cause of action for false arrest.

1. A false arrest is an illegal arrest; the innocence of the

REFERENCES FOR POINTS IN HEADNOTES

[1, 6] 32 Am Jur 2d, False Imprisonment § 99.
[2, 4] 32 Am Jur 2d, False Imprisonment § 44.
 False imprisonment: liability of private citizen for false arrest by officer. 21 ALR2d 643.
[3] 32 Am Jur 2d, False Imprisonment § 80 *et seq.*
[4] 32 Am Jur 2d, False Imprisonment § 114.
[5] 32 Am Jur 2d, False imprisonment § 45.
[7] 32 Am Jur 2d, Flase Imprisonment § 123.
 Principal's liability for false arrest or imprisonment caused by agent or servant. 92 ALR2d 15.

person arrested is not an element of the tort. An action for false arrest cannot be maintained where an arrest is legal, even if the person arrested is innocent. In this case, the police had probable cause, on the basis of information provided by the cashier and her identification of the plaintiff, to conclude that a felony had been committed and that the plaintiff had committed it, and the arrest was justified.

2. The cashier and store manager of Farmer Jack, in identifying the plaintiff and telephoning the police, did no more than provide information. The police acted on and in the exercise of their own judgment and not at the direction of the store employees.

3. The plaintiff failed to establish that information was withheld from the police by the store managers, so it need not be decided whether withholding information might justify imposing liability for false arrest. The record does not support an inference that the store managers on duty when the plaintiff was arrested doubted the cashier's identification because she had claimed to have seen the robber on a number of other occasions when the police were not called. The failure of the managers to inform the police of earlier sightings of a suspect by the cashier does not present a prima facie case of false arrest for withholding information, assuming that withholding information may be actionable.

Affirmed.

Justice Williams, dissenting, would hold that the crucial element in an action for false arrest or false imprisonment is not that the arrest or detention was unlawful. The test is whether the defendant had legal justification to arrest or detain the plaintiff. The proper issue in this case was not whether the police officers had probable cause to arrest the plaintiff, but whether the defendants, through their employees, had probable cause for the arrest they instigated. Under the common law of Michigan, a person can justify his participation in the arrest by showing that he had probable cause to arrest because a felony had been committed and he had reasonable cause to believe that the plaintiff had committed it. The statute defining the arrest powers of a private person may have changed the common law, and the case should be remanded to the Court of Appeals for consideration of the effect of the statute.

1. False arrest or imprisonment is an arrest or imprisonment of a person who is innocent of the charge for which he is arrested by or at the instigation of another person without

legal justification. Legal justification means legal authority. A private citizen can participate at the direction of a police officer in an arrest which later is found to be unlawful and nevertheless be absolved of civil liability. On the other hand, a private citizen who acts through the police without legal justification, such as by providing the police with false information, would be subject to liability for false arrest even though the officer, acting reasonably on the false information, is found to have made a lawful arrest. Thus, the legality of an arrest is not necessarily a bar to maintaining an action for false arrest or imprisonment.

2. A person who instigates the arrest of another person who is found to be innocent is as liable for false arrest as if he made the arrest himself. A person is not liable for false arrest where he merely reports information concerning a supposed offense to legal authorities who are left entirely free to use their own judgment in effecting the arrest or in detaining the suspect. Failure to make a full and fair disclosure to the authorities, however, can have a material bearing on determining whether a person instigated a false arrest or merely reported information because the authorities cannot fairly exercise their judgment where they have less than full and fair disclosure.

3. In this case, the defendants' employees, a cashier and two managers, did more than merely provide information to the police. One of the managers summoned the police to their store and told them that an armed robber was present, and the cashier pointed out the plaintiff in unequivocal and accusing terms. The managers failed to inform the police of the frequency of the cashier's reported sightings of the robber or of their reasonable suspicions regarding the reliability of the identifications. Nor did the managers inform the police of the decisions not to call the police when the previous reports were made. This information was directly relevant with respect to the credibility of the accusation which resulted in the plaintiff's arrest. The jury would have been justified on these facts in concluding that the defendants, through their employees, failed to make a full and fair disclosure to the police. The trial court did not err in denying the defendants' motion for a directed verdict, and the decision of the Court of Appeals to the contrary is reversed.

4. Under the common law, a private citizen had the legal justification or authority to make an arrest without a warrant when, at the time of the arrest, a felony had been committed and the citizen had probable cause to believe that the person

arrested had committed the felony. A private citizen was also justified when he responded to the request or command of a person whom he knew to be a peace officer, regardless whether the officer had legal justification to arrest. Thus, a mistaken arrest of a person later found to be innocent did not result in liability for false arrest where the defendant could show probable cause for making the arrest and that a felony had actually been committed. The plaintiff in an action for false arrest has the burden of showing a false arrest, but a prima facie case for false arrest is established where proof is offered that the defendant either arrested the plaintiff or instigated his arrest for a crime which he did not commit.

5. Under the Code of Criminal Procedure, a private person may make an arrest for a felony committed in his presence; where the person to be arrested has committed a felony, although not in the presence of the arresting party; or where summoned by any peace officer to assist him in making an arrest. However, the statute does not mention the necessity of probable cause in establishing legal justification for such an arrest, and there appears to be no case law interpreting the effect of the statute on the common-law rule. Because the issue was neither briefed nor argued in the trial court or before the Court of Appeals or the Supreme Court, the Supreme Court is not in a position to make its own interpretation. Accordingly, the case is remanded to the Court of Appeals for a plenary hearing with respect to whether the statute replaces the common-law rule; whether the statute authorizes a private citizen to arrest an actual malefactor only for a felony committed in his presence immediately following the commission of the crime or at a subsequent time and, if so, whether the citizen must have probable cause to believe that the person arrested committed the crime; and whether the statute changed the right of justification of a mistaken arrest by a showing of probable cause.

### OPINION OF THE COURT

1. ARREST — FALSE ARREST — LEGAL JUSTIFICATION.

An action for false arrest cannot be maintained where an arrest is legal, even if the person arrested is innocent; where the police have probable cause to conclude that a felony has been committed and that the person arrested committed the felony, an arrest is justified.

DISSENTING OPINION BY WILLIAMS, J.

2. ARREST — FALSE ARREST — INSTIGATION.

*A person who without legal justification instigates an arrest of an innocent person by a police officer is liable for false arrest in the same manner as if he had made the arrest himself.*

3. ARREST — FALSE ARREST — WORDS AND PHRASES — ACTIONS.

*False arrest or imprisonment is an arrest or imprisonment of a person who is innocent of the charge for which he is arrested by or at the instigation of another person without legal justification; the crucial element in an action for false arrest or imprisonment is not that the arrest or imprisonment be unlawful, but that the defendant lacked legal justification to arrest or detain the plaintiff.*

4. ARREST — FALSE ARREST — LEGAL JUSTIFICATION — ACTIONS.

*The legality of an arrest is not necessarily a bar to maintaining an action for false arrest or imprisonment; a private citizen who provides the police with false information which results in a plaintiff's arrest acts through the police without legal justification and is subject to liability for the false arrest of the plaintiff even though the police are later found to have acted reasonably on the information and to have effected a lawful arrest.*

5. ARREST — FALSE ARREST — REPORTING INFORMATION — FULL DISCLOSURE.

*A person who merely reports information to legal authorities concerning a supposed offense which results in the arrest of another person is not liable for false arrest where the authorities, rather than being instigated to make the arrest by the informant, are left entirely free to use their own judgment in determining whether to arrest or detain the suspect; however, where the informant fails to make full and fair disclosure to the authorities, he may be found to have instigated a resultant arrest because the authorities were unable to freely exercise their judgment.*

6. ARREST — FALSE ARREST — COMMON LAW — CODE OF CRIMINAL PROCEDURE — LEGAL JUSTIFICATION.

*Under the common law, a private citizen had the legal justification or authority to make an arrest without a warrant when, at the time of the arrest, a felony had been committed and he had probable cause to believe that the person arrested had committed the felony, or when he responded to the request or command of a person whom he knew to be a peace officer, regardless of whether the officer had legal justification to arrest;*

*however, the section of the Code of Criminal Procedure which provides for arrest by a private citizen does not mention the necessity of probable cause in establishing legal justification for the arrest and may change the common-law rule in that respect and with respect to justification of a mistaken arrest by a showing of probable cause (1927 PA 175; MCL 764.16; MSA 28.875).*

7. ARREST — FALSE ARREST — ACTIONS — BURDEN OF PROOF.
    *The plaintiff in an action for false arrest has the burden of showing a false arrest, but a prima facie case for false arrest is established where proof is offered either that the defendant arrested the plaintiff or that he instigated the arrest for a crime that the plaintiff did not commit.*

*Milia & Curran, P.C.* (by *Robert P. Milia*), and *Faintuck, Shwedel, Wolfram, McDonald & Zipser* (by *William G. Wolfram)* for plaintiff.

*Gromek, Bendure & Thomas* (by *Mark R. Bendure)* for defendants.

LEVIN, J. Detroit police officers arrested Herbert Smith Lewis on information supplied by Donna Holiday who identified Lewis to the police officers as one of the persons who had committed an armed robbery at a Farmer Jack supermarket in which she had been employed as a cashier. The arrest occurred five months after the robbery, when Lewis patronized another Farmer Jack market where Holiday was then employed. At her request, the police were called.

Subsequent investigation disclosed that Holiday was mistaken in her identification, and the charges against Lewis were dismissed.

Lewis had, however, been incarcerated, and he brought this action for false arrest against Holiday's employer, Farmer Jack.

The Court of Appeals set aside the jury's verdict of $40,000 on the ground that the evidence did not

establish a cause of action for false arrest. We agree.

A false arrest is an illegal or unjustified arrest.[1] On the basis of information provided by Holiday and her identification of Lewis, the police had probable cause to conclude that a felony had been committed and that Lewis had committed it. Thus, looking at the arrest from the point of view of whether the police, who made the arrest, had the legal right or justification to act as they did, the arrest was legal and justified and was not a false arrest.[2]

It is said, however, that Holiday and Farmer Jack are subject to liability because Holiday instigated the arrest by pointing to Lewis and saying "Yeah, that's the one". In so pointing to Lewis, Holiday did no more, and the manager in telephoning the police had done no more, than provide information. The police acted on and in the exer-

[1] See fn 2.

The innocence of the person arrested is not an element of the tort of false arrest. *McCullough v Greenfield*, 133 Mich 463; 95 NW 532 (1903); *Larson v Feeney*, 196 Mich 1; 162 NW 275 (1917).

[2] An action for false arrest cannot be maintained where the arrest is legal even if the person arrested is in fact innocent. If the arrest is legal, there has not been a false arrest. A person who has been legally arrested may bring an action for malicious prosecution, but is required to show that the defendant acted with malice.

The distinction between lawful and false arrests is set forth in 1 Restatement Torts, 2d, § 45A, p 69:

"One who instigates or participates in the *unlawful* confinement of another is subject to liability to the other for false imprisonment." (Emphasis added.)

Comment b states:

"In order for this section to be applicable to an arrest, it must be a false arrest, *made without legal authority.* One who instigates or participates in a lawful arrest, as for example an arrest made under a properly issued warrant by an officer charged with the duty of enforcing it, may become liable for malicious prosecution, as stated in Chapter 29, or for abuse of process, as stated in Chapter 31, but he is not liable for false imprisonment, since no false imprisonment has occurred." (Emphasis added.)

Similarly, see Prosser, Torts (4th ed), § 11, p 49; 35 CJS, False Imprisonment, § 14; 32 Am Jur 2d, False Imprisonment, § 8.

cise of their own judgment and not at the direction of Holiday or the manager.[3]

Lewis argues that Farmer Jack is subject to liability because Holiday and other employees of Farmer Jack withheld information from the police and, thus, the police were not acting on the basis of complete information.

Because we conclude that Lewis failed to establish that information was withheld, we need not decide whether withholding information might justify imposing liability for false arrest.[4]

---

[3] "It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them." 1 Restatement Torts, 2d, § 45A, Comment c, p 70.

See also 32 Am Jur 2d, False Imprisonment, §§ 44, 45, pp 98-104.

*Maliniemi v Gronlund,* 92 Mich 222; 52 NW 627 (1892), is not on point. There the defendant Gronlund received a telegram asking that a man be arrested bearing a certain description. Gronlund thought Maliniemi fit that description. A policeman came to the door and said he had an order to arrest Jacob Martella. According to Maliniemi, Gronlund pointed out Maliniemi although Gronlund had no basis to so conclude. This Court said:

"According to plaintiff's statement, defendant did more than simply to communicate facts and circumstances of suspicion to the officer, *leaving such officer to act on his own judgment.* The officer, who is not sworn in the case, *evidently acted upon the judgment of Gronlund,* and it may well be said that defendant directed the arrest." (Emphasis supplied.) 92 Mich 227.

In the instant case, Holiday communicated facts and circumstances to the officer, her perception that Lewis was the robber. The officer was left to act on his own judgment and evidently acted on his own judgment in arresting Lewis.

Similarly, see *Doty v Hurd,* 124 Mich 671, 673-674; 83 NW 632 (1900).

[4] It is argued that where information is withheld the police are misled and thus may not be acting on their own judgment but in response to the misdirection of the person withholding or supplying partial information, and that a person who provides false or misleading information to an officer may be liable for false arrest.

The cases of *Simpson v Burton,* 328 Mich 557; 44 NW2d 178 (1950), and *Howard v Burton,* 338 Mich 178; 61 NW2d 77 (1953), where the defendant was ultimately held liable for participating in a false arrest, do not stand for the proposition that a person can be held liable although the arrest is legal. The Court did not consider the legality of the arrest in those cases.

Lewis claims that the jury could have reasonably concluded that the employees of Farmer Jack misrepresented or withheld information on the basis of the discrepancy between the composite description and Lewis' physical characteristics. The record does not, however, indicate that Holiday described Lewis in the manner in which the composite description described him. While she participated in supplying information for the composite description, it does not appear whether she saw the composite description after it was prepared.[5] At the trial, some seven years later, she could not recall how she had described the robber, and her acknowledgment that she had participated in providing a composite description does not support an inference that she withheld information from the police when they were summoned five months after the composite description was prepared.[6]

The assistant manager at the store where Lewis was arrested was also at the store that was robbed; he too had been transferred. He did not testify at the trial. There is nothing in the record tending to

Malicious prosecution cases such as *Renda v International Union, UAW,* 366 Mich 58; 114 NW2d 343 (1962), are not in point. Malicious prosecution can be found only where "defendant has proceeded under proper legal formalities". Prosser, fn 2 *supra,* p 835.

[5] Between three and five people participated in making the composite description. At trial, the composite descriptions were read to Holiday, after which the following exchange took place:

"*Q.* Are those the descriptions you participated in, in giving information to the police?

"*A.* Yes, that sounds correct.

"*Q.* And the one individual that was involved in the holding of the gun with you, was the one with the hat; is that correct?

"*A.* Um hmn."

Holiday's answers do not indicate that she had adopted the composite descriptions as her own.

[6] There is no need to inquire into a defendant's good or bad faith where, as here, the arrest was legal. That inquiry would be appropriate in an action for malicious prosecution where malice is in issue.

show that he saw the composite description or that he gave any information describing the robber who had confronted Holiday.[7]

Lewis stresses that Holiday had claimed to have seen the robber patronizing Farmer Jack stores on a number of occasions after the robbery and had reported these sightings to managers who had not called the police. It is urged that the jury could properly conclude that the reason why the police were not called was because the managers did not credit her identification, that the police should have been told of these doubts, and that information might have caused them to proceed more cautiously in acting on Holiday's identification of Lewis.

The record does not, however, support an inference that managers on duty when Lewis was arrested did in fact doubt her identification. It is as likely that the managers decided not to call the police on the earlier sightings because the man she thought was the robber had left the store on each occasion before she was able to reach the manager's office. The jury had no basis for inferring that the reason the police were not called was doubt regarding Holiday's identification on these earlier sightings rather than the managers' believing that it would not have been appropriate to call the police after the man sighted could not be readily apprehended.

Lewis did not show that Holiday had on an earlier occasion identified someone other than Lewis.[8] It is nevertheless separately urged that the

[7] The manager's participation in providing information for the composite description may have been confined to supplying information concerning a second robber who had confronted the manager in his office. There is nothing in the record to indicate that the manager had seen or could identify the robber who confronted Holiday.

[8] Lewis testified that he had been working until shortly before he

police should have been informed that Holiday thought she had seen the robber a number of times. The failure to inform the police that there had been earlier sightings by Holiday does not alone make a prima facie case in false arrest for withholding information, assuming, again, that withholding information may be actionable as false arrest.

Affirmed.

FITZGERALD, C.J., and KAVANAGH, COLEMAN, and RYAN, JJ., concurred with LEVIN, J.

WILLIAMS, J. This case involves a false arrest. One of defendants' stores was the scene of an armed robbery during which a cashier was confronted by one of the two armed robbers. Subsequently the cashier reported to the store manager on several occasions that she had seen the robber at the store where the robbery occurred and at another one to which she had been transferred. However, not until months later when she complained of seeing him three times at the store in one day did the manager call the police. On arrival the police were directed by the manager to the cashier, in hiding, who described, then pointed out, plaintiff as the robbery suspect. The police arrested, handcuffed and jailed plaintiff. In point of fact, plaintiff was a Farmer Jack check-cashing-card customer and was out of the state on business

---

entered the store. From this it is inferred that the person whom Holiday said she saw on two earlier occasions in the store on the day Lewis was arrested was someone other than Lewis. This might support the inference that Holiday was prone to misidentification. But it does not appear that Holiday was aware that she identified someone other than Lewis on these other occasions or that the managers were aware that she had identified someone else. Absent evidence that the managers knew that she identified someone else or that she was aware that she identified someone else, her employer could not be subjected to liability on the theory that she withheld information.

on the day of the robbery. He sued and won a jury verdict for false arrest, despite defendants' motion for directed verdict. The Court of Appeals reversed.

This case raises two major issues. First, whether the facts established merely a citizen reporting information to the police who in their independent judgment arrested an innocent shopper, or a police arrest "instigated" or "directed" by a citizen. Mere citizen reporting is not actionable, whereas citizen "instigating" or "directing" may be actionable. Second, what constitutes legal justification for a mistaken arrest? This issue includes three subconsiderations: (a) whether the arrest in the instant case was the result of mere citizen reporting or active citizen "instigation" is important because legal justification is different for a police officer than for a citizen making an arrest; (b) what constituted legal justification under Michigan common law prior to 1927 PA 175; and (c) whether 1927 PA 175, which defines the power of a private person to arrest, changed the common law of legal justification.

We hold (1) that, giving the plaintiff the benefit of the most favorable inferences from the facts, as we must on defendants' motion for directed verdict, the jury was entitled to find, as they did, that defendants' employees did more than merely report information to the police but, rather, "instigated" plaintiff's arrest; (2) that therefore the question of legal justification for the arrest related to whether defendants' employees, not the police, had legal justification; (3) that prior to the enactment of 1927 PA 175 an arrest by a citizen was legally justified, if (a) in fact a felony had been committed, and (b) the citizen had probable cause to believe that the person arrested committed that

felony; and (4) that 1927 PA 175 may well have changed the common law of justification for arrest. As a consequence, (1) we reverse the Court of Appeals decision that a directed verdict was proper as to defendants' instigating the arrest; (2) we do not decide whether there should have been a directed verdict because of justification on the facts, because we do not decide whether 1927 PA 175 changed the common law, as that issue was addressed neither by the Court of Appeals nor the trial court nor argued by the parties before them or before us. We therefore remand the issue of legal justification for the arrest, particularly whether 1927 PA 175 changed the common law, to the Court of Appeals for plenary consideration. Since the Court of Appeals did not have occasion to consider the correctness of the trial court's action with respect to jury instructions, the parties shall be given the opportunity to argue this question before the Court of Appeals.

## I. Facts

On Friday evening, October 6, 1972, two armed men entered a Farmer Jack supermarket at 6561 Gratiot at Bellevue in Detroit, subdued a security guard, and proceeded to rob the store. Donna Holiday, a part-time employee of defendant supermarket, was ringing up an order when one of the robbers grabbed her by the arm from behind. When she turned around, the assailant pointed a gun in her face and said: "This is a hold up". Ms. Holiday followed the gunman's instructions and emptied the contents of her cash register into a paper bag. Meanwhile, the second robber was taking money from the manager, Styan Austin, and a

second cashier who was turning in her day's receipts. The two assailants escaped with approximately $1,660 and remain at large today.

The Detroit police, after receiving a telephone call from defendants' store, arrived at the store at 8:10 p.m., shortly after the robbery, and received descriptions of the gunmen from several witnesses including Ms. Holiday who had gotten a good look at both assailants.[1] A composite description was recorded by the police in the preliminary complaint report.

Description: Number one, black male, 27, five feet ten, 170, short Afro, very dark complexion, dark blue jacket, blue pants, armed with blue steel revolver.

Number two, black male, 25, five feet eight, slim build, mustache, large brim black hat, brown suede jacket, armed with a large automatic.

The police report also indicated that assailant number one robbed Ms. Holiday. At a March, 1977, pretrial deposition, Ms. Holiday confirmed that her assailant was the dark-complexioned, bareheaded robber, while the other man near the door with the store manager was slimmer and wore a hat.

At the November, 1979, trial, however, the composite descriptions were read to Ms. Holiday and the following questioning took place:

---

[1] Ms. Holiday described both men at a 1977 pretrial deposition and thought she could identify both of them in a lineup. "I got a good look at the two men * * * that held up the store at the time. I got a good look at both of them. I could describe their weight and everything at the time." She estimated that the second gunman, who was standing by the door with the manager, was approximately 12 feet away from her and noted that he had ordered her to lie down on the floor when he saw her staring at him after the first gunman had taken her money.

"*Q.* Are those the descriptions you participated in, in giving information to the police?

"*A.* Yes, that sounds correct.

"*Q.* And the one individual that was involved in the holding of the gun with you, was *the one with the hat;* is that correct?

"*A.* Um hmn." (Emphasis added.)

The police records clearly show that the robber with the hat was the one at the door rather than the one who robbed Ms. Holiday. Neither party noticed the discrepancy. Both plaintiff and defendant rely on the above testimony identifying robber number two as a starting point in their arguments on the reasonableness of the identification of plaintiff Lewis.

A couple of days after the robbery, Ms. Holiday reported seeing the man who robbed her at gunpoint. The suspect and a woman were seen by Ms. Holiday when they went through another cashier's check-out line. Ms. Holiday observed that the couple had made a large food purchase which they paid for with food stamps. She testified, however, that she waited until the suspect went out the door of the store before attempting to tell the manager, Mr. Austin. "I told the manager, but he didn't understand what I said until after [the suspect] left [was out of sight of the store window]. I said that was the guy that robbed me because I got a very good look at the two guys. * * * I thought it was the one who stuck the gun in my face". The police were never called.

In December, 1972, Ms. Holiday was transferred to another Farmer Jack store, located a mile away at 10220 Gratiot at Georgia. She again claimed to have seen her assailant on several different occasions either shopping or standing in the check-out lines.

"Everytime the man came to the store, I always went to the manager and stated the fact that this man was in the store until the time that, you know, everytime he'd come in after he'd leave, I never indicated to this man that I knew him".

Occasionally the suspect would use Ms. Holiday's check-out line. She described the man as "real nice and friendly", so friendly that she became even more suspicious of him, wondering whether he had recognized her from the earlier robbery. Despite repeated notification to the manager, who coincidentally was Styan Austin, the manager from the previous store, the police were never called until Thursday, March 22, 1973. On that day, Ms. Holiday reported seeing the suspect in the store on at least three separate occasions: one time going through her check-out line, a second time while he was shopping in the store, and a third time later that evening shopping at the meat counter. When she saw the man for the third time, she became very nervous and told the two managers then on duty in no uncertain terms that the suspect was the gunman who had robbed her. As Ms. Holiday recalled at trial:

"I said, 'This is the man. This man has been in the store three or four times and this is the man that put the gun up to my face. This is the man that robbed me, definitely.'

"I told them that and they said, 'Are you sure?'"

She insisted she was, and the police were summoned.

The record is unclear as to who called the police. Ms. Holiday testified that she neither telephoned the police nor told any co-employee of her suspicions except the two managers. However, on ap-

peal, "[d]efendants acknowledge the reasonableness of the inference that the manager summoned the police".

Fearful that the suspect would recognize her, Ms. Holiday obtained permission to leave her cash register and "go to the back".[2]

Detroit Police Officers Smollen and Vanlinder received a radio call at 7:40 p.m. ordering them to go to the Farmer Jack store to investigate a man identified as being wanted for armed robbery. The two uniformed officers talked with a male employee, most likely one of the two managers because only they knew where Ms. Holiday was, who directed them to where Ms. Holiday was hiding. As Officer Smollen recounted:

"[S]he indicated to us that she had been employed at another store farther down Gratiot, south on Gratiot, and that she was held up.

* * *

"[S]he indicated to me and my partner the man that held her up on that previous occasion was down the aisle and she gave us a physical description of that man.

* * *

"She said there was a black male about six feet tall, heavy mustache, wearing a brown leather jacket. At that point my partner and I turned to our left and looked down the aisle and we saw the man.

"At that point, I mentioned to her, 'Can you see him?' you know, and then she kind of motioned over * * *.

* * *

"[S]he pointed him out. When he was walking he

---

[2] "The back" apparently refers to "the backroom" of the store where the cashiers deposited their cash register receipts with the manager. The term backroom is a misnomer because it is at the front of the store next to Ms. Holiday's express lane check-out station. Thus, when the two uniformed police officers arrived at the store they met Ms. Holiday in the front of the store at or near her cash register.

came into range of all three of us and she said, 'Yeah, that's the one.' "

Ms. Holiday also told the officers that the suspect had been in the store two or three times earlier that day, but neither she nor the two managers informed the officers that she had claimed to have seen the suspect on several prior occasions in the previous months and that on those occasions the police had not been called.

The man Ms. Holiday pointed out to the police was plaintiff Herbert Lewis, a 40-year-old black male with a mustache, who was five feet, eleven inches tall and weighed 187 pounds. Lewis recalled: "I was going down the aisle to pick up my canned goods, and I was bending over, and somebody grabbed me from behind and stuck a gun to my head and said, 'Don't move.' " Several officers converged on Lewis, and he soon found himself handcuffed and being led out of the store.

After being grabbed, Lewis recalled seeing two armed plain-clothed men running toward him and momentarily thought that he was the victim of a robbery. He soon discovered, however, that he was being arrested by the Detroit police but claims that he was never told the reason for his apprehension until the next day. While his two next-door neighbors looked on, Lewis was led out of the store. "One officer had me by one arm and one officer had me by the other arm and one officer was behind me and I was marched out of the store". Lewis recalled six police officers in all, five in the aisle and one at the door of the store.[3]

[3] There is a slight discrepancy concerning how plaintiff was arrested. Officer Smollen testified that he and his partner made the initial arrest with their guns drawn. Both policemen were wearing uniforms, but two plain-clothes officers backed up the arrest. Smollen testified that there were a total of four officers involved while Vanlinder could not recall the exact number of officers participating.

Lewis was first taken to the 15th Precinct, but soon afterwards was transferred to police headquarters at 1300 Beaubien for fingerprinting and holding. That night, Ms. Holiday went to the police station after work and identified Lewis at a lineup as one of the two men in the October 6 robbery. A second lineup was held the next day for the security guard on duty on the night of the robbery, but no identification was made. Nevertheless, on the basis of Ms. Holiday's unequivocal identification, Lewis was arraigned on Friday, March 23, and was formally charged with armed robbery. Through the aid of counsel retained by his wife, Lewis was released on a $500 cash bond. After a week of investigation by plaintiff and his wife, employment records were found proving beyond question that Lewis was in Oberlin, Ohio, working for the Federal Aviation Administration on October 6, 1972, the day of the robbery. The robbery charge was therefore dropped, and the criminal case was dismissed at the preliminary examination on March 30, 1973.

Plaintiff filed suit in October, 1974, against defendant Farmer Jack Division, Inc., and its parent company, Borman's, Inc., for false arrest. A jury trial was held in November, 1978, and a verdict was returned for plaintiff, awarding him $40,000 in damages. A judgment for $49,844, including interest and costs, was entered by the trial court on December 27, 1978. The trial court denied defendants' motion for a new trial. The Court of Appeals unanimously reversed in an unpublished per curiam opinion on October 1, 1980, holding:

"[P]laintiff failed to establish a case of false arrest or false imprisonment, and the trial court erred in failing to grant defendants' directed verdict motion. The record indicates that defendants' agent made a full and fair

disclosure of the material facts, as she believed them to
be, to the arresting officers and that there was probable
cause for plaintiff's arrest."

We granted leave to appeal on June 8, 1981. 411
Mich 973.

## II. LEGAL ELEMENTS OF FALSE ARREST

The arguments of the parties and the opinions
expressed by the trial court and the Court of
Appeals seem to indicate a lack of consensus as to
the legal elements of *false* arrest or imprison-
ment.[4] Therefore, we undertook to derive the ele-

[4] False arrest and false imprisonment are often used interchange-
ably, Prosser, Torts (4th ed), § 11, p 42, although there is technically a
difference between the two actions.

"False arrest and false imprisonment as causes of action are said to
be distinguishable only in terminology. The difference between them
lies in the manner in which they arise. It is not necessary, to commit
false imprisonment, either to intend to make an arrest or actually to
make an arrest. However, a person who is falsely arrested is at the
same time falsely imprisoned, and an unlawful arrest may give rise to
a cause of action for either false arrest or false imprisonment. Thus,
it has been stated that false arrest and false imprisonment are not
separate torts, and that a false arrest is one way to commit false
imprisonment; since an arrest involves a restraint, it always involves
imprisonment." 32 Am Jur 2d, False Imprisonment, § 2, pp 59-60. See
35 CJS, False Imprisonment, § 2, p 624.
However, false arrest and false imprisonment should not be confused
with malicious prosecution.

"[T]he distinction between them is fundamental, the essential differ-
ence being the validity of the legal authority for the restraint im-
posed. In malicious prosecution the detention is malicious but under
due form of law, whereas in false imprisonment the converse is true.
The detention is unlawful, but malice and lack of probable cause are
not essential, as a general rule, to the cause of action. Thus, where
the process on which an arrest is made is regular and legal in form
and issued by a court of competent authority, but is sued out mali-
ciously and without probable cause, the remedy is an action for
malicious prosecution. *But a suit for false arrest or imprisonment is
the proper action where the aggrieved party is arrested without legal
authority,* as where he is arrested pursuant to process that is void. In
the case of malicious prosecution, the valid process justifies the
restraint or imprisonment, and the gist of the cause of action is
malice or evil intent. *In false imprisonment,* on the other hand, *the
essence of the tort consists in depriving the plaintiff of his liberty*

ments from Michigan cases and other authorities prior to the enactment of 1927 PA 175. Without attempting to set forth the broad implications of the terms "arrest" or "imprisonment", we found the following:

False arrest or imprisonment is arrest or imprisonment

(1) of a person

(2) who is innocent of the charge on which he is arrested

(3) by the defendant or at his instigation

(4) without legal justification.

Some comments are in order. First, normally an action for false arrest or imprisonment involves a person in fact innocent of the offense for which he or she was arrested or imprisoned. We have set up the elements to include innocence as an element of false arrest, but we have found three isolated cases recognizing an action for false arrest where the arrestee subsequently pled guilty of the crime for which there had been a faulty arrest. *McCullough v Greenfield*, 133 Mich 463; 95 NW 532 (1903); *Durham v Feeney*, 195 Mich 318; 162 NW 79 (1917); and *Larson v Feeney*, 196 Mich 1; 162 NW

*without lawful justification.* The liability asserted against the defendant, in an action for false imprisonment, is one for unlawful interference with the person of the plaintiff." (Emphasis added.) 32 Am Jur 2d, *supra,* § 4, pp 60-61. Accord, 35 CJS, *supra,* § 4, pp 625-627; 1 Restatement Torts, 2d, § 35, Comment a, p 52; Anno: *False imprisonment: liability of private citizen for false arrest by officer,* 21 ALR2d 643, 647-648; Prosser, *supra,* § 11, p 49; 1 Harper & James, The Law of Torts, §§ 3.6, 3.7, 3.9, pp 224-228, 231-232. See *Safeway Stores, Inc v Barrack,* 210 Md 168, 173; 122 A2d 457 (1956). *Broughton v New York,* 37 NY2d 451, 456; 373 NYS2d 87; 335 NE2d 310 (1975).

275 (1917). These cases do not appear to have been relied on subsequently.

Second, defendants reiterated in their brief and during oral argument that "a false arrest claim is designed to remedy an *illegal arrest,* irrespective of the factual guilt or innocence of the person arrested". (Emphasis added.) The crucial element in an action for false arrest or false imprisonment is not that the arrest or detention was unlawful. The test is whether the defendant had legal justification to arrest or detain the plaintiff. *Safeway Stores, Inc v Barrack,* 210 Md 168, 173; 122 A2d 457 (1956).

In most false arrest or false imprisonment cases, the restraint or detention will not be legally justified when the arrest is illegal. Thus, in the past, this Court on occasion seems to have looked to the lawfulness of the arrest to determine, at the same time that it was weighing, the legal justification. See, *e.g., Barker v Anderson,* 81 Mich 508, 511; 45 NW 1108 (1890); *Donovan v Guy,* 347 Mich 457, 464; 80 NW2d 190 (1956).

By legal justification we mean legal authority. As the District of Columbia Court of Appeals observed: "[L]egal justifications may only be found where the person making the arrest has legal authority to do so." *Shaw v May Dep't Stores Co,* 268 A2d 607, 609 (DC App, 1970). Accord, *The Great Atlantic & Pacific Tea Co, Inc v Paul,* 256 Md 643, 655; 261 A2d 731 (1970).

However, it is evident that the test turns on the presence of legal justification rather than the legality of the arrest when one considers that, on the one hand, a private citizen can participate in

an unlawful arrest and not be subject to civil liability under certain circumstances, and, on the other hand, can participate in a lawful arrest and be subject to civil liability under other circumstances. For example, a private citizen who, acting under the direction of a police officer, assists in an arrest later adjudicated to be unlawful is nevertheless absolved of civil liability. *Firestone v Rice*, 71 Mich 377, 380-381; 38 NW 885 (1888). Accord, MCL 764.16(c); MSA 28.875(c). See Anno: *Liability, for false imprisonment or arrest, of a private person answering call of known or asserted peace or police officer to assist in making arrest which turns out to be unlawful*, 29 ALR2d 825; Prosser, *supra*, § 26, p 133; 32 Am Jur 2d, False Imprisonment, § 46, pp 104-105; Wilgus, *Arrest Without a Warrant*, 22 Mich L Rev 798, 798-800 (1924). Although the arrest was unlawful, no action may be maintained against the private citizen because he acted with legal justification under the direction of the police officer in making the arrest.

Contrariwise, it is possible that an arrest could be adjudicated lawful as between the arrestee and the police, yet a private citizen, acting through the police without legal justification, would be subject to liability for false arrest. If a private citizen summons a police officer and intentionally gives him false information accusing another of a felony and if the officer, reasonably acting on this false information, arrests the innocent person, the arrest would be lawful.[5] However, grounds for an action for false arrest would still exist against the individual who intentionally accused the innocent

---

[5] The arrest would be lawful since the misleading information gave the police officer probable cause to believe that a felony had occurred and that the accused had committed that felony. See MCL 764.15(d); MSA 28.874(d).

person since the defendant instigated the arrest
without legal justification. See *Howard v Burton,*
338 Mich 178, 183-184; 61 NW2d 77 (1953); *Simp-
son v Burton,* 328 Mich 557, 561-562; 44 NW2d 178
(1950). See also 32 Am Jur 2d, False Imprison-
ment, § 45, p 104. Therefore, the legality of the
arrest is not necessarily a bar to maintaining an
action for false arrest or false imprisonment.

Third, the elements might be changed by 1927
PA 175, although it is more likely that only the
definition of what constitutes legal justification
might be changed.

Fourth, the term "legal justification" is not the
same thing as "probable cause". For example, the
Court of Appeals opinion stated that "where an
arrest is made on probable cause, the arrest is
valid, and any false imprisonment claim falls
away". There are situations where this statement
may be true, but usually it is not unless it is also
clear that a felony for which the person was
arrested had been committed. The Court of Ap-
peals statement was, however, irrelevant in this
case because it referred to the police having proba-
ble cause, whereas the proper issue in this case
was whether defendants through their employees
had probable cause for the arrest they "instigat-
ed".

### III. DID DEFENDANTS "INSTIGATE ARREST" OR "MERELY REPORT INFORMATION"?

The Court of Appeals reversed the refusal of the
trial court to grant a directed verdict for three
reasons, two of which are pertinent here. That
Court stated its reasons for reversal as follows:

"First, defendants' agent (the cashier) did no more than report those facts which she believed indicated that a felony had been committed and that plaintiff was the felon.

\* \* \*

"Second, the cashier gave the police a full and fair disclosure of the material facts as she believed them to be."

The Court's third reason was that since the cashier had probable cause the arrest was justified. This point is not wholly relevant because, as we shall later discuss, the pertinent question was whether *all* of defendants' employees had probable cause. In any event, the question of legal justification is affected by 1927 PA 175, so that neither the Court of Appeals nor we can decide the question of probable cause until 1927 PA 175 is construed.

Before determining whether the Court of Appeals was correct in its conclusion, it is appropriate to review the legal standards established by Michigan case law and other authorities for "instigation" of arrest and "merely reporting" along with "full and fair disclosure".

## A. "Instigating" Arrest

It is a well-established rule of law that a person who *instigates* the arrest of another person who turns out to be innocent is as liable for false arrest as if he made the arrest himself. The majority rule of law holds that:

"An individual who directs or requests a peace officer to make an arrest which turns out to be illegal will be liable in the same manner as if he had made the arrest himself, however pure his motives may have been. \* \* \* The person directing an unlawful arrest may be liable, although the officer acting is exonerated." 35

CJS, False Imprisonment, § 24, p 655. See 32 Am Jur 2d, False Imprisonment, § 38, p 94.

The leading case in Michigan on this subject is *Maliniemi v Gronlund,* 92 Mich 222; 52 NW 627 (1892). The plaintiff was an Upper Peninsula miner who had reached New York City on his way to his native Finland. He had twice talked to the defendant about his overseas ticket. The defendant testified that he had received a telegram from Ishpeming asking him to have a man of a certain description arrested. He thought that the plaintiff filled the description and replied that the man was in New York. Later a policeman came to the defendant's office seeking to arrest one Jacob Martella. The defendant said he didn't know anyone by that name, but said, " 'Here is one fellow that answers the description.' " 92 Mich 226. The defendant said that, following the instruction of the policeman, he went into the room where the plaintiff was waiting with some others and said, without looking at or pointing toward defendant, " 'Jacob Martella, here is a gentleman that wants to see you.' " *Id.,* 227. Plaintiff, however, said that the defendant came in with the policeman and beckoned to him with his hand to come forward because the policeman wanted to talk with him, whereupon the officer arrested him, *id.,* 225, and subsequently jailed him. Plaintiff sued for false imprisonment and recovered a judgment. On appeal, the Supreme Court affirmed.

This Court said in *Maliniemi:*

"If it had not been for defendant, plaintiff would never have been arrested or imprisoned. The whole period of plaintiff's imprisonment was the natural result of defendant's acts. * * * [D]efendant did more than simply to communicate facts and circumstances of

suspicion to the officer, leaving such officer to act on his own judgment. The officer * * * evidently acted upon the judgment of [defendant], and it may well be said that defendant directed the arrest." 92 Mich 227.

This test was quoted with approval later by this Court in *Howard v Burton,* 338 Mich 178, 184; 61 NW2d 77 (1953), where the facts were not pertinent to the instant case.[6]

These two Michigan cases support the majority rule as reported in 35 CJS, False Imprisonment, § 24, p 655, *supra.* No other Michigan Supreme Court cases illuminating this rule were called to our attention, and we were unable to find any. There is, however, a corollary which limits the application of the *Maliniemi* rule. That rule distinguishes *Maliniemi* cases from those where a person merely gives information to the police and all further action is determined by the police.

## B. *Merely Reporting*

The distinction between false arrest and merely giving the police information was early drawn in *Murphy v Walters,* 34 Mich 180, 181 (1876). In that case, the defendant, upon being advised by the prosecutor's representative that certain action committed by the plaintiff was illegal, swore out a complaint against the plaintiff, and the plaintiff

[6] Other states have also recognized this principle.

"It is thoroughly settled law that a person is liable for a false arrest made by another if he 'directed, advised, countenanced, encouraged, or instigated such arrest. *Snider v Wimberly,* 357 Mo 491; 209 SW2d 239 (1948)." *Knupp v Esslinger,* 363 SW2d 210, 213 (Mo App, 1962). Accord, *Hammargren v Montgomery Ward & Co,* 172 Kan 484, 494; 241 P2d 1192 (1952). *Smith v Dist of Columbia,* 399 A2d 213, 218 (DC App, 1979).

Similarly, it has been held that " 'the person who makes the charge which sets the machinery of the law in motion, or procures the prosecution, is liable; and this rule applies equally whether he does the act himself or procures another to do it' ". *Knight v Baker,* 117 Or 492, 497; 244 P 543 (1926).

was arrested without any further intervention by the defendant except as a witness. The plaintiff was tried and discharged because of void process. The plaintiff thereupon sued and obtained judgment against the defendant for false arrest. On appeal to this Court, we reversed for failure of the trial court to give the defendant's requested instruction that the defendant was not liable if all he did was to state the facts of his complaint to the acting prosecuting attorney and swear to the complaint prepared by that official. We there said:

"It seems to be considered that in criminal proceedings a person who simply lays facts before a magistrate, and leaves all further action to the unbiased and unsolicited conduct of the latter is not liable in trespass for false imprisonment, unless he takes some part in furthering the arrest, or urging the detention." 34 Mich 181-182. See *Simpson v Burton*, 328 Mich 557; 44 NW2d 178 (1950). *Doty v Hurd*, 124 Mich 671, 672-674; 83 NW 632 (1900).

Prosser, Torts (4th ed), § 11, p 47, ties together the two corollaries as follows:

"One who participates in an unlawful arrest, or procures or instigates the making of one without proper authority, will be liable for the consequences; but the defendant must have taken some active part in bringing about the unlawful arrest itself, by some 'affirmative direction, persuasion, request or voluntary participation.' There is no liability for merely giving information to legal authorities, who are left entirely free to use their own judgment, or for identifying the plaintiff as the person wanted".

See also 1 Restatement Torts, 2d, § 45A, p 70, Instigating or Participating in False Imprisonment, Comment c.

## C. *Full and Fair Disclosure*

The matter of full and fair disclosure, although more often applied to malicious prosecution cases, *e.g., Swaney v John Schlaff Creamery Co,* 212 Mich 567; 180 NW 599 (1920); *Smith v Tolan,* 158 Mich 89; 122 NW 513 (1909), logically applies to cases of false arrest as well. Full and fair disclosure applies to cases of false arrest in two ways. Part of the underlying philosophy of the instigation of false arrest is that the defendant's judgment and volition rather than that of the police officer activated the arrest.[7] Obviously if the defendant did not make a full and fair disclosure to the police officer, the police officer could not exercise his or her full judgment with respect to the information which the informant knew to be incorrect or inexact, but which the police officer did not. Therefore, failure to make full and fair disclosure can have a material bearing on the determination whether a defendant instigated a false arrest or merely reported information.[8] Correlatively, it may also affect a defendant's ability to interpose the defense of probable cause, *i.e.,* that a crime had

[7] See 32 Am Jur 2d, False Imprisonment, § 45, pp 100-101. See, *e.g., (Blue) Star Service, Inc v McCurdy,* 36 Tenn App 1, 10; 251 SW2d 139 (1952) (informant not liable if police officer acted on his own volition but is liable if officer acted under informer's direct or indirect request).

[8] See Anno: *False imprisonment: liability of private citizen, calling on police for assistance after disturbance or trespass, for false arrest by officer,* 98 ALR3d 542, 545. See, generally, *Howard v Burton,* 338 Mich 178, 183-184; 61 NW2d 77 (1953) (defendant incorrectly told the police that his stepson had been poisoned by plaintiff); *Simpson v Burton,* 328 Mich 557, 561; 44 NW2d 178 (1950) (trial court erred in failing to instruct jury that if they found that defendant did not request plaintiffs' arrest and "did not make any false statement nor give the police officers purposefully a false impression which an ordinarily prudent person would not give under the circumstances, defendant would not be liable"). *Cf. Renda v International Union, UAW,* 366 Mich 58, 87; 114 NW2d 343 (1962) (malicious prosecution exists if informant "by false statements, or wilful concealment of facts, or improper inducement or pressure on prosecuting officials, caused the issuance of [plaintiff's] warrant").

been committed and that the defendant had reasonable cause to believe that the plaintiff committed the crime. If the defendant gave the police officer misinformation, it is likely that the defendant did not have probable cause, otherwise the true facts would have been given to the police officer.

We have not been referred to, nor have we found, Michigan cases that fully illuminate this matter. *Smith v Tolan, supra,* 93, a malicious prosecution case, does, however, speak generally to the point by negative implication:

"It is the settled law in this State in actions for malicious prosecution and false imprisonment that, where a prosecuting witness has in good faith fully and fairly stated all of the material facts within his knowledge to the prosecuting officer and acted upon his advice, proof of the fact establishes a case of probable cause." (Citation to malicious prosecution *and* false imprisonment cases omitted.)

There are some cases from our sister states that help illuminate and support the rule requiring full and fair disclosure. As in Michigan, the rule is exemplified in cases involving malicious prosecution or false imprisonment, or both. One case of false imprisonment alone indicates the rule and the reason for it, *Burk v Howley,* 179 Pa 539; 36 A 327 (1897). There, the defendant whose silver was stolen from his home called upon the police to come to his house and said that it was an inside job and that the plaintiff maid was the only one inside. The court referred to testimony by a police officer relating to these facts, then said:

"He [defendant] does not intimate to the officer the girl's previous good character which he had satisfied himself of when he employed her the week before, and

which, if known to the officer, would have prompted him to caution." 179 Pa 549.

As a result of this omission, the court affirmed the trial court's refusal to give a jury charge in the defendant's favor that all he did was report the facts to the police.

Another case dealing exclusively with false arrest for alleged theft speaks to an old rule that a charge of false arrest is avoided if the defendant made the charge leading to the arrest upon the advice of counsel. See *Poupard v Dumas,* 105 Mich 326; 63 NW 301 (1895); *Harris v Woodford,* 98 Mich 147; 57 NW 96 (1893). The court in *Wright v Young,* 128 Ill App 2d 100, 103; 262 NE2d 769 (1970), quoted from a prior case as follows:

"In *Froemke v Massman,* 215 Ill App 86, at page 89 (1919), the court stated:

" 'To justify by advice of counsel the defendant must show that he stated to such counsel all the facts bearing upon the guilt or innocence of the accused in good faith. The making of an exaggerated or incorrect statement or the withholding of any material fact is inconsistent with probable cause. It is incumbent upon the defendant to show what information was given to his counsel, so that the jury may determine whether it was a full, truthful and correct statement of all the facts.' "

In the *Wright* case, the failure of full and fair disclosure went to justification by probable cause, but it is submitted that such failure of information would also apply to "instigation" for the same reason, namely that the official actually making the arrest was not doing so because of his own judgment on the facts of the matter but upon defendant's less than full and fair exposition of the facts.

In addition to cases dealing with less than full disclosure are cases dealing with false disclosure.

*Jensen v Barnett,* 178 Neb 429; 134 NW2d 53 (1965), involved a charge of false imprisonment alone where a hotel clerk refused to admit the plaintiff to his hotel room, and the issue was whether in calling the police who arrested plaintiff the clerk had by his total actions instigated the arrest. In upholding the verdict, the court said:

"The problem is not so much the governing rules as it is their application. A private citizen who by affirmative direction, persuasion, or request procures an unlawful arrest and detention of another is liable for false imprisonment. However, if he merely states to a peace officer his knowledge of a supposed offense and the officer makes the arrest entirely upon his own judgment and discretion, the informer is not liable. (Citations omitted.)

"A corollary imposes liability upon an informer if he knowingly gives to an officer false information which is a determining factor in his decision to make an arrest. See 1 Harper & James, The Law of Torts, § 4.11, p 339." 178 Neb 431-432.

See *Schmidt v Richman Gordman, Inc,* 191 Neb 345, 351; 215 NW2d 105 (1974).

The Michigan and sister-state cases certainly stand for the rule that the defendant can be just as liable for false arrest by instigating police officers to make the arrest as by personally and directly making the arrest. A distinction is made between instigating an arrest and merely informing the authorities that a particular person is suspected of or is guilty of a crime. However, where the defendant has not made full and fair disclosure to the authorities, he or she is not entitled to be considered as merely reporting, because merely reporting means that the authorities

can exercise their judgment whether to arrest, and, of course, they cannot fairly exercise their judgment if they have less than a full and fair disclosure.

### D. *Directed Verdict Not Warranted in This Case*

In reviewing a motion for directed verdict, the court must examine the evidence in the light most favorable to the nonmoving party. The evidence presented at trial showed that some unnamed party telephoned the police from the store. Defendants concede that it is reasonable to infer that one of the two managers on duty summoned the police. Upon arriving at the store, the police briefly talked with a male worker, and were directed to see Ms. Holiday. Since Ms. Holiday testified that she told only the managers of her suspicions and where she wished to hide, it would be reasonable for the jury to infer that the male employee with whom the police talked and who directed them to her was a manager. Ms. Holiday told the police that the man who had robbed her at gunpoint was in the store and gave the officers his description. When asked if she could see the suspect, Ms. Holiday "motioned over" toward plaintiff and "pointed him out" saying, " 'Yeah, that's the one.' "

We find that these facts show that defendants' employees did more than merely provide information to the police. The jury could have reasonably determined that, in summoning the police to the store and telling them that an armed robber was present, describing that person to the police and pointing him out with the unequivocal and accusing language, " 'Yeah, that's the one' ", the defendants, through their employees, were in effect ordering the police officers to do their duty and arrest plaintiff.

We reach this conclusion more readily because we disagree with defendants and the Court of Appeals that defendants made a full and fair disclosure of all material information to the police and thus provided the police with the opportunity to make an intelligent decision to arrest. The Court of Appeals stated:

"[T]he cashier gave the police a full and fair disclosure of the material facts, as she believed them to be. * * * The police were told that the prior robbery occurred several months earlier. They were also told of the cashier's presence at that prior robbery. The cashier gave information to the police concerning a crime of which she had first hand knowledge. There is no dispute that a prior robbery did actually occur and that the cashier got a good look at the perpetrator of that crime. While upon hindsight it appears that the cashier's identification was mistaken, this does not negate the fact that she reported to the police the information she believed to be correct."

The fatal flaw in the above analysis is that plaintiff is not suing the cashier. Plaintiff is suing the employer and its parent company for the actions of their employees, of whom the cashier was only one. We need not decide whether the cashier, acting alone, made a full and fair disclosure to the police. Defendants are responsible for the actions of all of their employees which occur in the course of their employment.

Ms. Holiday did not telephone the police; one of the two managers on duty that evening did. Upon arriving at the Gratiot and Georgia store, the police first spoke to a male employee, who directed them to Ms. Holiday. It would be reasonable for the jury to conclude that the male employee was one of the two managers since Ms. Holiday told only the managers of the sighting. Although Ms.

Holiday reported seeing her assailant to both managers on several previous occasions and although they had not reported such sightings to the police, there is nothing on the record that they disclosed these important facts to the police.

The failure to impart more information is particularly pertinent with respect to manager Styan Austin who was present at the robbery of the Gratiot and Bellevue store. He was also an eyewitness to the robbery. Although he may not have seen the robber who assaulted Ms. Holiday as well as she did, he was aware that almost immediately after the robbery she thought that she saw her assailant again. After transferring to the Gratiot and Georgia store a few months prior to plaintiff's arrest, Austin repeatedly received reports from Ms. Holiday that she had seen the suspect. Although both managers knew of Ms. Holiday's proclivity to see her assailant, neither informed the police at that time or even attempted to discover whether there was any basis for her earlier allegations. While a person accusing another of a crime is not expected to conduct an independent investigation of the suspect before calling the police, he must relay any reasonable suspicions in order for there to be a full and fair disclosure.

The jury could infer from the record that defendants' managers had reasonable suspicions that Ms. Holiday's identifications were unreliable. They did not tell the police about any of the previous identifications that had occurred over the previous several weeks, nor did they summon the police after the first two or three reports by the cashier on March 22. When Ms. Holiday approached the managers the final time to report seeing her assailant, it could be inferred that the managers had sufficient doubt of her identification to ask if she

was sure this time that the man was the robber. Despite their doubts, however, when the police arrived, both managers remained silent about Ms. Holiday's previous sightings and their previous failures to call the police. The police had no other way of knowing of the cashier's repeated and unacted-upon identifications. This information, directly relevant on the credibility of the accusation resulting in plaintiff's arrest, was not disclosed by any of the employees. Had the police known, they might have acted differently. The jury would have been justified in finding that defendants did not make a full and fair disclosure to the police. Therefore, the trial judge did not err in denying defendants' motion for a directed verdict because the jury could reasonably infer that defendants instigated the arrest. On this point, the Court of Appeals is reversed.

## IV. JUSTIFICATION OF AN ERRONEOUS ARREST

We now consider what constitutes legal justification for an erroneous arrest. However, we first turn to our statement of the elements of false arrest described in Part II. We said there:

False arrest or imprisonment is arrest or imprisonment

(1) of a person

(2) who is innocent of the charge on which he is arrested

(3) by the defendant or at his instigation

(4) without legal justification.

In Part III, we determined that there had been

arrest: (1) of a person, (2) who is innocent of the charge on which he was arrested, (3) at the instigation of defendant. Here, we must determine whether this was done with or without legal justification. But we first must consider what constitutes legal justification.

## A. *Justification Under Common Law*

Under the common law, a private citizen had legal justification or legal authority to make an arrest:

(1) when, at the time of the arrest, a) a felony had in fact been committed, and b) the private citizen had probable cause to believe that the person whom he arrested had committed the felony. *Maliniemi v Gronlund,* 92 Mich 227-228. See *People v Burt,* 51 Mich 199, 202; 16 NW 378 (1883); or

(2) when he responded to a person whom he knew to be a peace officer and acted in accordance with the officer's requests or commands regardless whether the officer had legal justification to arrest. *Firestone v Rice,* 71 Mich 377, 380-381; 38 NW 885 (1888).

Accord, Prosser, *supra,* §§ 11 and 26, pp 42-49, 131-134.

More specifically as to (1) above, Justice CAMPBELL noted when writing for a unanimous Court in *People v Burt,* 51 Mich 202:

"[N]o one, whether private person or officer, has any right to make an arrest without warrant in the absence of actual belief, based on actual facts creating probable cause of guilt. Suspicion without cause can never be an excuse for such action. The two must both exist, and be reasonably well founded."

The same common-law rule was applied in a

case in which a person instigated a police officer to make an arrest and the person arrested was found to be innocent. In *Maliniemi, supra,* 227-228, this Court unanimously held:

"A private person has a right to arrest a man on suspicion of felony without a warrant; but if he does so, and it turns out that the wrong man is imprisoned, he must be prepared to show in justification—*First,* that a felony has been committed; and, *second,* that the circumstances under which he acted were such that any reasonable person, acting without passion or prejudice, would have fairly suspected that the plaintiff committed it, or was implicated in it." (Original emphasis.)

While the quotation from *Maliniemi, supra,* could be said to be dictum because the defendant's action was not justified by showing probable cause, justification was shown and recognized in *Lynn v Weaver,* 251 Mich 265, 267; 231 NW 579 (1930). In *Lynn,* the plaintiff, in the midst of a brawl, was arrested without a warrant by the defendant police officers and was briefly incarcerated. This Court observed:

"The facts in the case were all admitted, and it became solely a question of law for the trial judge to pass upon. The arrest was made in good faith upon proper and probable cause and wholly within the duty of defendants."

It is thus clear that the common law of Michigan, at least prior to the enactment of 1927 PA 175, was that a mistaken arrest of an innocent plaintiff did not result in liability for false arrest if the defendant could show probable cause for making the arrest and if a felony had actually been committed.

B. *Proof of Justification*

It has been the rule in this state that a plaintiff has the burden of showing a false arrest, but a prima facie case for false arrest is established when the plaintiff proves that the defendant either arrested the plaintiff, or instigated his arrest, for a crime that the plaintiff did not commit. The primary authority for this rule is *Barker v Anderson,* 81 Mich 508, 511-512; 45 NW 1108 (1890), which states:

> "In actions of this kind it is for the plaintiff to show, not only that he was restrained of his liberty, but that the restraint was unlawful. * * * The mere fact that a person has been imprisoned is sufficient in itself, standing alone".

In *Barker,* the plaintiff's complaint, however, countered this inference because it showed that the arrest was instituted by normal process which would be assumed to be valid in the absence of a showing to the contrary. However, *Donovan v Guy,* 347 Mich 457, 464; 80 NW2d 190 (1956), is a false arrest case directly on point. There this Court reversed a directed verdict for the defendant and quoted *Barker* as follows:

> " 'As a general proposition, it must be admitted that it is only necessary for the plaintiff, in an action of this kind, to show that he has been imprisoned or restrained of his liberty. The presumption then arises that he was unlawfully imprisoned, and it is for the person who has committed the trespass to show that it was legally justified.' "

See generally *Director General of Railroads v Kastenbaum,* 263 US 25, 27; 44 S Ct 52; 68 L Ed 146 (1923); *Dellums v Powell,* 184 US App DC 275, 283; 566 F2d 167 (1977); *Carr v National Discount*

*Corp,* 172 F2d 899, 902 (CA 6, 1949); *Clarke v Dist of Columbia,* 311 A2d 508, 511 (DC App, 1973); Prosser, *supra,* § 11, pp 48-49.

## V. EFFECT OF 1927 PA 175

We have found that under Michigan common law a private citizen had legal justification to arrest another: (1) when, at the time of the arrest, (a) a felony had in fact been committed, and (b) the private citizen had probable cause to believe that the person he arrested had committed the felony; or (2) when he responded to a person whom he knew to be a peace officer and acted in accordance with the officer's requests or commands. However, in 1927, the Legislature enacted the following simple, yet potentially confusing, statute:

"A private person may make an arrest—
"(a) For a felony committed in his presence;
"(b) When the person to be arrested has committed a felony although not in his presence;
"(c) When summoned by any peace officer to assist said officer in making an arrest." MCL 764.16; MSA 28.875.

As under the common law, this act indicates that a private citizen has no authority to make an arrest unless a felony was actually committed or unless directed to do so by a peace officer. However, no mention is made in the statute of the necessity of probable cause to establish legal justification for the arrest. This has led at least one writer to observe that probable cause is totally immaterial in an action for false arrest against a private citizen:

"The Michigan statute requires [the private citizen]

to show that the very person arrested has in fact committed a felony, but exempts him from showing also that he had reason to know this fact. In other words, under the statute the private person is liable if he arrests an innocent person, no matter how reasonable his action may be, but he is protected, without inquiry as to his reasonableness, if the person he arrests is in fact guilty." Waite, *Some Inadequacies in the Law of Arrest,* 29 Mich L Rev 448, 458 (1931).

However, other interpretations of the statute may be possible. We find no case law interpreting the effect of this statute on the common-law rule concerning a private citizen's legal authority to arrest. Neither party briefed or argued the effect of 1927 PA 175 upon the common-law rule of justification by a showing of probable cause before the trial court, the Court of Appeals, or this Court.[9] As a consequence, this Court is not in a proper position to make its own interpretation, and we shall not do so.

## VI. CONCLUSION

We hold that a person who instigates a police officer to make an arrest of an innocent person is liable in the same manner as if he had made the arrest himself. We recognize the difference between instigating an arrest and merely reporting

---

[9] Defendants referred to 1927 PA 175 in their brief as follows:

"Had Ms. Holiday or the security guard taken the law into their own hands and arrested a factually innocent person, the arrest would have been violative of MCL 764.16 [MSA 28.875] and would therefore constitute an actionably illegal arrest. Here, however, defendants summoned the police, hence MCL 764.16 is inapplicable and it is necessary to turn to the statutory arrest authority of law enforcement officers."

The determination whether or not this is a proper interpretation of the statute, we remand to the Court of Appeals. It certainly would not have followed under the common law where the lay person had instigated the police to make the arrest. See, above, p 248, and 35 CJS, False Imprisonment, § 40(4), p 691.

suspicions, the latter not amounting to a false arrest. We also recognize that the failure to make fair and full disclosure to the authorities has an effect upon whether there was instigation or merely reporting as well as whether there is the possible defense of justification through probable cause. As a result of this review of the law and its application to the facts of this case, we hold that the Court of Appeals erred in reversing the trial court's refusal to grant a directed verdict.

We further hold that under the common law a defendant can justify his participation in an arrest by showing that he had probable cause to arrest because a crime had been committed and the defendant had reasonable cause to believe that the plaintiff committed it.

Finally, we find that 1927 PA 175 may change the common law of justification by having probable cause to arrest. However, since the matter is of first impression and was neither briefed nor argued in the trial court, the Court of Appeals, or this Court, and may be determinative of the outcome of this suit, we remand this case to the Court of Appeals for plenary hearing as to (1) whether MCL 764.16; MSA 28.875 replaces the common-law rule concerning the legal authority of a private citizen to arrest and, if so, (2) whether MCL 764.16(a); MSA 28.875(a) authorizes a private citizen to make an arrest of the actual malefactor only for a felony committed in his presence where the arrest immediately follows the crime or whether the arrest can be made at a subsequent time; (3) whether, if MCL 764.16(a); MSA 28.875(a) authorizes an arrest of the actual malefactor at some time later than the commission of the felony, the statute requires a citizen to have probable

cause to believe that the suspect is the criminal; and (4) whether 1927 PA 175 changed the right of justification of the mistaken arrest of an innocent person because of having probable cause to believe that a defendant committed a crime and that a crime had actually been committed. In addition, as requested, the parties shall also be given the opportunity to argue the validity of the jury instructions given and of the failure of the trial court to give others, because the Court of Appeals opinion did not deal with this matter.

RILEY, J., took no part in the decision of this case.