### McCULLOUGH *v.* GREENFIELD.

1. FALSE IMPRISONMENT—ILLEGAL ARREST—MISDEMEANOR—WARRANT.

   Arrest for a misdemeanor at one place, by direction of an officer who is at another place with the warrant, is illegal.

2. SAME—WAIVER—PLEADING GUILTY.

   Liability for an illegal arrest is not waived by the person, when

arraigned, making no objection to the manner of the arrest, and pleading guilty.

3. SAME—DAMAGES.

Where an arrest was made within the jurisdiction of the court issuing the process therefor, and was illegal only because the officer having the warrant was not present, but it was made by his direction, damages could be recovered only to the time he took the prisoner into his custody.

4. SAME—HANDCUFFING PRISONER.

Where an officer has two prisoners, strangers to him, and it is long after dark, and he has a considerable distance to go with them, his liability for an illegal arrest is not increased by his handcuffing them.

Error to Kalamazoo; Adams, J. Submitted February 18, 1903. (Docket No. 87.) Decided June 23, 1903.

Case by Robert McCullough against Burr Greenfield for false imprisonment. From a judgment for plaintiff, defendant brings error. Reversed.

*Harry C. Howard*, for appellant.

*Thomas, Cummins & Nichols*, for appellee.

MOORE, J. This is a case for false imprisonment. In the spring of 1901, while engaged in distributing advertising matter in the city of Kalamazoo, the plaintiff was stopped by one of the city policemen, and referred to the city clerk's office for a license to distribute advertising matter, which he applied for and obtained. The defendant claims that, at the time the plaintiff was applying for the license, the defendant explained to him there was an ordinance of the city of Kalamazoo against nailing advertising matter on telephone poles, and the plaintiff promised, if he was permitted to have the license for distributing advertising matter, he would not tack placards upon the poles. The plaintiff denies having this conversation.

The plaintiff, after obtaining his license, distributed his advertising matter, and, on the last day of his sojourn in

Kalamazoo, nailed placards on a very large number of telephone, telegraph, and municipal lighting poles throughout the city, and immediately left for Battle Creek. The defendant reported the matter to the city attorney, and under his advice complaint was made, a warrant issued, and placed in the hands of the defendant for service. After the defendant obtained the warrant, he telephoned to the police clerk at Battle Creek that he had a warrant for the arrest of the plaintiff and one McBride, and, if they were in the city of Battle Creek, to detain them until he could arrive.

The plaintiff and McBride were arrested by Officer Hamilton, of Battle Creek, and detained at the police station for about three hours, when Mr. Greenfield, with his warrant, arrived and took the men into custody. About 8 o'clock, it being after dark, the defendant put upon the plaintiff and McBride handcuffs, boarded the interurban car for Kalamazoo, and, after changing cars twice *en route*, reached their destination late in the evening, about 10 or 11 o'clock. The plaintiff and his companion were detained at the jail at Kalamazoo until morning, when they were taken before Recorder Browne, where they each pleaded guilty, paid their fine, and left the city. Some months later the plaintiff instituted this suit. It was conceded the plaintiff was guilty of a violation of a valid ordinance, and no question is raised about the regularity of the warrant.

The trial judge charged the jury, among other things, as follows:

"I charge you that, under the undisputed evidence in the case, the arrest of the plaintiff at Battle Creek on April 25, 1901, by Police Officer Hamilton of that city, and his detention in the jail at that place for the space of three hours or thereabouts, was illegal and without authority of law, and constituted a false imprisonment of the plaintiff. If this unlawful imprisonment of plaintiff at Battle Creek was at the request of and under the instructions of the defendant, Greenfield, it became and was in

133 MICH.—30.

law his act, just as much as though he had done it himself, and he, defendant, Greenfield, is responsible to plaintiff, McCullough, for all such damages as you may find he suffered during the time of such illegal detention."

"The arrest and detention of the plaintiff at Battle Creek having been illegal, as I have charged you, and it being conceded by the defendant that the plaintiff was not restored to his liberty before being taken into custody by Mr. Greenfield, I instruct you that the illegal character of the detention continued until the arraignment of the plaintiff in the recorder's court of this city on the forenoon of April 26, 1901."

"An officer, in making an arrest, should avoid unnecessary harshness or violence.  He has no right to use handcuffs, unless, in his honest judgment, under all the circumstances of the case, he is apprehensive of the escape of his prisoner if he does not use them.  In this case, under the proofs offered by the defendant himself, I charge you that no justification is shown for handcuffing the young men together, and the act of doing so constituted an unjustifiable assault upon the plaintiff, for which defendant is liable to him in damages." .

"Now, I feel warranted in instructing you, as a matter of law, in this case, that the injury complained of is not technical, but real.  The illegal deprivation of liberty in this case, and the illegal imposition of handcuffs, were real personal injuries, and require that you award plaintiff something more than nominal damages.  How much more, it is for you to say, in the exercise of your best judgment.  I can only say that it should be such a sum as will fairly and fully compensate him for the injuries received.  Beyond such a sum you should not go, nor should you stop short of that."

The jury returned a verdict for $50.  The case is brought here by writ of error.

[The first question presented is, Was the arrest at Battle Creek by the direction of the defendant illegal, when the warrant was in the possession of the defendant at Kalamazoo?  In the case of *People* v. *McLean*, 68 Mich. 480 (36 N. W. 231), it was said:

"McLean was charged simply with a misdemeanor, and he could not be arrested for the crime, after the commission of the act, without a proper warrant.  The war-

rant was issued and delivered to the sheriff.    The sheriff is authorized to take such assistance with him in making an arrest as he may deem necessary, and the warrant in his possession, while present and pursuing his object, will be a justification to his assistants in making the arrest. But he has no authority to send an undersheriff or deputy to one place to make an arrest without a warrant, while he goes to another for the same purpose with the warrant. He cannot send his deputy into one town or county while he gives pursuit in another.    Under the ancient practice of hue and cry, before warrants were issued, this might be done in the pursuit of felons, but no hue and cry could be raised for a misdemeanor.  We think it clear that, in cases of misdemeanors, the sheriff must be present, either in sight or hearing, directing the arrest, to justify a person not armed with the warrant to make the arrest."

See, also, *Drennan* v. *People*, 10 Mich. 184; *People* v. *Johnson*, 86 Mich. 175 (48 N. W. 870, 13 L. R. A. 163, 24 Am. St. Rep. 116); *Smith* v. *Clark*, 53 N. J. Law, 197 (21 Atl. 491).

It is claimed by defendant that as the plaintiff, when arraigned, made no objection to the manner of his arrest, but pleaded guilty to the charge, by so doing he waived any irregularity in the arrest, and cannot recover.    The authorities upon this proposition are not harmonious.    In 12 Am. & Eng. Enc. Law (2d Ed.), p. 743, it is said:

"It has been held by a court of high authority that a party cannot maintain a civil action for damages for false imprisonment where his arrest has been followed by conviction in a criminal court, and that conviction remains unreversed, unless such person establishes the fact that his conviction was obtained by fraud and conspiracy. But it is believed that this means no more than that, where there has been an arrest without warrant, conviction on the charge is, in general, *prima facie* evidence of probable cause.    If more than this is intended, it is contrary to the weight of a majority of the best-considered cases. Indeed, the converse of the proposition, it would seem, has been expressly denied in the same State, viz., where there has been an arrest without warrant, a discharge by the police justice is *prima facie* evidence of want of probable cause."

See, also, cases cited in the notes.

We think the weight of authority does not favor the conclusion that the liability for the illegal arrest is waived by pleading guilty to the offense charged in the warrant. Did the court err in holding that, after defendant personally took plaintiff into custody, his warrant did not protect him from that time until the plea of guilty was entered? There is a dearth of decisions in point, and the authorities upon this proposition are also disagreed. The case of *Mandeville* v. *Guernsey*, 51 Barb. 99, cited in support of the charge of the court, was one where a sheriff from the State of Pennsylvania arrested the accused in the State of New York, and carried him into the State of Pennsylvania. The court held that not only did the sheriff have no authority to make the arrest in New York, but that he committed an offense against the laws of the State of New York when he removed the prisoner to the State of Pennsylvania. The case is very different from the one at bar. In that case the accused was beyond the reach of the process of arrest, and could be lawfully brought within the jurisdiction of the court issuing the warrant only by obtaining the requisition of the governor of Pennsylvania. In the case at bar the plaintiff was within the reach of process, and might be arrested by any person having a lawful warrant. The case was removed to the court of appeals (50 N. Y. 669), and affirmed by a divided court. No opinion was filed.

In *Cabell* v. *Arnold*, (Tex. Civ. App.) 22 S. W. 62, where an illegal arrest had been made, and the accused was afterwards delivered to an officer having a legal warrant, a judgment for damages for the illegal detention of the accused to the time he was delivered to the officer having the warrant was sustained.

Many of the cases cited by counsel are civil cases, in which a different rule obtains than the one applicable to criminal cases.

In *Holley* v. *Mix*, 3 Wend. 350 (20 Am. Dec. 702), it is said:

"The warrant against John Doe did not authorize the arrest of any person other than John Doe. It was altered by inserting the name of the present plaintiff, and then it was a justification for all subsequent regular acts of all concerned in its execution."

In *Harris* v. *McReynolds*, 10 Colo. App. 532 (51 Pac. 1016), which was an action for false imprisonment, the court used the following language:

"'But it is contended for the defendant that the false imprisonment of the plaintiff lasted only from the time of his arrest at the verbal direction of the defendant until the making of the complaint and the issue of the warrant, and that his detention in custody afterwards was not false imprisonment. The court was requested to so instruct the jury, but the request was refused, and error is assigned upon the refusal. If the process by which it was assumed to hold the plaintiff in custody was valid process against him, the instruction should have been given."

As before stated, the plaintiff, when taken into custody in the first instance, was within the jurisdiction of the court issuing the process. If the defendant in person had made the arrest, instead of procuring it to be made by a police officer at Battle Creek, it would have been a valid arrest; or if no arrest had been made in fact until the defendant took the plaintiff into custody, its validity could not have been questioned. I think it unreasonable to say that, because the first arrest was invalid, the second one was also invalid, and that the jury should have been instructed that plaintiff could recover damages only to the time of the lawful arrest.

Did the trial judge correctly instruct the jury in relation to putting the handcuffs upon the plaintiff? The record does not disclose any undue harshness or discourtesy done to the plaintiff by the officer, unless putting the handcuffs upon him is to be so regarded. In *Firestone* v. *Rice*, 71 Mich. 377 (38 N. W. 885, 15 Am. St. Rep. 266), it is said:

"The sheriff cannot stop when the man is unknown to him, at the moment of arrest, to inquire into his character, or his intentions as to escape, or his guilt or innocence of

the offense charged against him.    His duty is to take him, to safely keep him, and to bring his body before a magistrate.    If he does this without wantonness or malice, it is not for a jury to find that his precautions were useless and unnecessary in the light of after-acquired knowledge of the true character and intent of the accused, and to punish the sheriff in damages for what honestly appeared to him at the time to be reasonable and right."

See, also, *Butler* v. *Washburn*, 25 N. H. 257.

The officer had two prisoners, who were strangers to him, under arrest.    It was long after dark.    He had a considerable distance to go with them.    It was his duty to follow the mandate of his warrant.    There was nothing in his conduct to indicate wantonness or malice, and the jury should have been so instructed, and that they should not find any additional damages because the prisoners were handcuffed.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.