ALEXANDER v. THOMPSON et al.

(Circuit Court of Appeals, Sixth Circuit. April 2, 1912.)

No. 2,181.

1. FALSE IMPRISONMENT (§ 18*)—CIVIL LIABILITY—LIMITATIONS—STATUTES.

An action against a sheriff for false imprisonment committed by his deputies is within Comp. Laws Mich. 1897, § 9729, requiring actions for false imprisonment to be begun within two years after the accrual of the cause of action, and is not within section 9730, providing a limitation of three years for actions against sheriffs for misconduct of their deputies.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. § 84; Dec. Dig. § 18.*]

2. LIMITATION OF ACTIONS (§ 75*)—DISABILITIES—"STATE PRISON"—IMPRISONMENT.

The London, Ontario, Insane Asylum is not the state prison within Comp. Laws Mich. 1897, § 9733, postponing the running of limitations for false imprisonment when the right of action accrues while plaintiff is imprisoned in the state prison until the removal of the disability.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 415, 416; Dec. Dig. § 75.*

For other definitions, see Words and Phrases, vol. 7, pp. 6638–6639; vol. 8, p. 7804.]

3. LIMITATION OF ACTIONS (§ 55*)—ACCRUAL OF CAUSE OF ACTION.

Limitations prescribed by Comp. Laws Mich. 1897, § 9729, requiring actions for false imprisonment to be begun within two years after the accrual of the cause of action, begin to run from the time the imprisonment ends, and an imprisonment ends when the detention for which defendants are responsible ceases.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 299–306; Dec. Dig. § 55.*]

4. LIMITATION OF ACTIONS (§ 195*)—BURDEN OF PROOF.

Where a plaintiff, suing for false imprisonment, shows an imprisonment originally unlawful, the burden is on defendants to show the running of the statute of limitations by proving the termination of the unlawful imprisonment, but defendants need not introduce the necessary proof, but it is sufficient if the fact is shown by plaintiff's evidence.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 711–716; Dec. Dig. § 195.*]

5. LIMITATION OF ACTIONS (§ 55*)—ACTIONS—BURDEN OF PROOF.

Plaintiff was placed in a Canadian asylum as a private patient with her consent. She remained a little over a month, when she was allowed to leave on probation, the term of which expired on a designated date.

On the day before defendants took plaintiff into custody, and she was received at the asylum on the designated date. A deputy sheriff of one of the defendants accompanied plaintiff to the asylum, where they were met by asylum attendants, and where plaintiff was turned over to them. Plaintiff remained at the asylum for some time, until she was taken therefrom by relatives. There was nothing to show that the asylum authorities did not in good faith insist on plaintiff re-entering the asylum at the termination of the probation period. *Held* that, since the unlawfulness of the confinement in the asylum after the designated date was not shown, limitations against defendants, sued for false imprisonment, began to run from the date of plaintiff's re-entry into the asylum.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 299–306; Dec. Dig. § 55.*]

**6.** LIMITATION OF ACTIONS (§ 195*)—ACTIONS—BURDEN OF PROOF.

Plaintiff had the burden of proving the unlawfulness of her confinement in the asylum on her return at the expiration of the probation period, in order to prevent the running of limitations in favor of defendants.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 711–716; Dec. Dig. § 195.*]

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

Action by Jennie Alexander against Albert E. Thompson and another. There was a judgment for defendants, and plaintiff brings error. Affirmed.

Joseph Walsh (David A. Fitzgibbon and C. R. Black, on the brief), for plaintiff in error.

C. B. Grant (Warren, Cady & Land and Frank Lodge, on the brief), for defendants in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. The plaintiff sued to recover damages for alleged false imprisonment; the charge being, in substance, that at the instigation of defendant Thompson (a physician residing at St. Clair, Mich.) plaintiff was on October 27, 1905, unlawfully taken into custody by defendant Moore (then sheriff of St. Clair county), through the latter's deputies, and on the following day taken to London, Ontario, and there delivered into the custody of the officers of the London Insane Asylum, where she was detained until December 25th following.

This action was begun November 22, 1907. At the conclusion of the evidence the court directed verdict for defendants, on the ground that the action was barred by the statute of limitations (C. L. Mich. 1897, § 9729), which requires actions for false imprisonment to be begun within two years after the cause of action accrues. If this direction was right, the judgment must be affirmed.

[1] One of the errors assigned raises the proposition (not, however, argued in the brief) that the case falls within section 9730 of the Michigan Compiled Laws, which provides a limit of three years for actions against sheriffs for misconduct or neglect of their deputies.

We think this point without merit. Trask v. Wadsworth, 78 Me. 336, 5 Atl. 182; Sibley v. Estabrook, 4 Gray (Mass.) 295.

[2] Equally without force is the contention that the case is brought within section 9733 of the Michigan Statutes, which, in case the plaintiff in an action of false imprisonment is, when the right of action accrues, imprisoned "in the state prison," postpones the running of the statute until the removal of the disability. The London Insane Asylum was clearly not the "state prison" contemplated by the statute.

Defendants insist that the record affirmatively and conclusively shows that plaintiff was never imprisoned by defendants, and that, in any event, the imprisonment ended on the morning of October 28th, after which, as defendants allege, plaintiff went voluntarily to London, although accompanied by the sheriff's deputy. But we think there was evidence tending to sustain the alleged imprisonment of the plaintiff on October 27th, and that it would have been open to the jury to find that plaintiff was in defendants' custody during the trip to London, and until she was taken in charge at that place by the asylum authorities.

[3] The crucial question is whether plaintiff's imprisonment by the defendants in this case ceased when she was received into the London Asylum, or whether it continued until her discharge therefrom. In the former case the action would be barred. In the latter it would not be. It is properly conceded that the statutory limitation runs, not from the time imprisonment begins, but from the time it ends, and in our opinion, for the purposes of this case, the imprisonment must be deemed to have ended when the detention for which defendants were responsible ceased; or, otherwise stated, when, if ever, a lawful restraint by the asylum authorities became substituted for that previously exercised or claimed by defendants.

[4] It is, of course, true that, an imprisonment originally unlawful having been shown, the burden is normally upon the defendants to show the running of the statute by proving the termination of the unlawful imprisonment. But it is not necessary that proof to this effect be introduced by defendants. It is sufficient if the fact is shown by plaintiff's evidence.

[5] Plaintiff's counsel contend in their brief that:

"There was not a time from the date of [plaintiff's] arrest in St. Clair to the time of her liberation from the London Asylum that she was not under the charge, direction, and control of the defendants."

There is nothing in the record to sustain this contention, as a proposition of fact. On the contrary, the record effectually negatives the existence of any charge, direction, or control, in fact, on the part of defendants over the plaintiff, from the time she entered the asylum on October 28th. But, as defendants might be liable for an unlawful detention of plaintiff on the part of the asylum authorities, directly resulting from an unlawful arrest by defendants, the question remains whether it sufficiently appears that such subsequent restraint by the asylum authorities was lawful. We think plaintiff's own testimony (and none was introduced by defendants) presumptively indicates the lawfulness of such subsequent restraint by the asylum authorities.

The London Asylum is a government institution. Plaintiff was placed therein by her family August 20, 1905, as a private patient, upon the advice of her physician, and with her full consent. She remained until September 30, 1905, when she was allowed to leave on probation, the term of probation expiring October 28th following, at 11 a. m., which was the same day on which she actually returned, through the instrumentality, as is claimed, of the defendants. While the meaning of the term "on probation" is not defined in the record, we think it fairly inferable that it means at least that on the expiration of the period of probation plaintiff was to return if the asylum authorities thought it necessary. Plaintiff lived at St. Thomas, about 15 miles from London. After she had been taken by the sheriff's deputies from St. Clair to Port Huron, she was told she could go to her home, but not by way of St. Clair. She decided to go home by way of London (where connection could be made for St. Thomas), and on the same train she actually took on October 28th. She expected, however, to go alone, until she learned from the sheriff's woman deputy that the latter was to accompany her. This deputy bought the railroad tickets and accompanied plaintiff to London, where she was met at the railway station by a "lady bailiff and male attendant" of the asylum. The sheriff's deputy turned plaintiff over to this "lady bailiff," by whom plaintiff was taken to the asylum, accompanied (at her request) by the sheriff's deputy, who was present during plaintiff's interview with the asylum physician and officers, and who requested the latter to let her take plaintiff to her home at St. Thomas, which request was refused. On December 25th following plaintiff was taken from the asylum by her mother and uncle, "against the express wish of the doctor in charge of the asylum," and went to her home in St. Thomas. The record is barren of any evidence tending to show that the asylum authorities did not in good faith insist upon plaintiff's re-entering the asylum on October 28th, and on her continued confinement there until December 25th, or tending to show that plaintiff's detention in the asylum between the two dates last mentioned was unlawful or improper. We find no suggestion in the testimony that plaintiff questioned the right and power of the asylum authorities to require her return on October 28th, or to detain her until the time of her actual discharge. So far as we can infer from the record, plaintiff (while reluctant to return to the asylum) seems to have recognized the right and power of the asylum authorities to require her return. Under the circumstances stated, we think a natural presumption is raised in favor of the lawfulness of plaintiff's confinement after her re-entry and until her discharge. Had she not been allowed to leave on probation, a presumption of the continued lawfulness, until her final discharge, of a confinement originally lawful, would clearly have existed. We do not think the situation was changed in this respect by her release on probation merely, under circumstances so far as shown here.

[6] In our opinion, the facts shown by plaintiff put the burden upon her of proving the unlawfulness of her confinement in the asylum on and after October 28th. This burden she did not sustain. Defendants were thus not liable for damages arising from plaintiff's

detention after the last-named date.   McCullough v. Greenfield, 133 Mich. 463, 95 N. W. 532, 62 L. R. A. 906, 1 Ann. Cas. 924; Harris v. McReynolds, 10 Colo. App. 532, 51 Pac. 1016; Wyatt v. Hill, 71 Vt. 468, 45 Atl. 1044.   We think it follows that the right of action accrued October 28th, and so was barred when suit was begun.

The judgment of the Circuit Court is accordingly affirmed, with costs.