BREWER v PERRIN

Docket No. 68478. Submitted October 4, 1983, at Detroit.—Decided March 5, 1984.

Plaintiff, Mary F. Brewer, administratrix of the estate of Gary G. Catron, deceased, brought an action in the Wayne Circuit Court against defendants, Robert J. Perrin, William Haber, Mark Tims and Paul Sadowski, all of whom are employees of the Southgate Police Department, the City of Southgate, and several others, following the death of her 15-year-old son, Gary Catron, who killed himself while confined in the Southgate City Jail. The five-count complaint alleged: (1) architect's and builder's malpractice, (2) the city's liability for a defective building, (3) false arrest and false imprisonment, (4) assault and battery, and (5) the deprival of Gary's constitutional rights in violation of 42 USC 1983. The trial court, Robert J. Colombo, J., granted a summary judgment dismissing the last three counts. Defendants Perrin, Haber, Tims, and Sadowski were therefore dismissed from the suit. Plaintiff appeals from the grant of the summary judgment and the dismissal of the four individual Southgate Police Department employees (hereinafter referred to as the defendants). *Held:*

1. The defendants did have probable cause to arrest the deceased. Even though the deceased was a juvenile, the facts indicate that the police had probable cause to arrest him for felonious assault. Whether or not the deceased could actually

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Summary Judgment §§ 26, 27.

[2] 32 Am Jur 2d, False Imprisonment §§ 7, 100.

[3] 5 Am Jur 2d, Arrest § 44 *et seq.*

[4] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 79.

[5, 6] 5 Am Jur 2d, Arrest §§ 81, 82.

[6] 5 Am Jur 2d, Arrest § 75.

[7-9] 15 Am Jur 2d, Civil Rights §§ 268, 269.

60 Am Jur 2d, Penal and Correctional Institutions § 52.

Relief under Federal Civil Rights Acts to state prisoners complaining of denial of medical care. 28 ALR Fed 279.

[10] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children § 35.

have been convicted is irrelevant because actual innocence is not an element of the tort of false arrest. The trial court, therefore, did not err in granting the summary judgment on the false arrest and false imprisonment counts since the plaintiff did not show that the arrest was without probable cause.

2. The trial court properly granted the summary judgment on the assault and battery count since the plaintiff did not allege that the defendants used unreasonable force in arresting the deceased.

3. The facts developed so far indicate that a jury could reasonably conclude that the defendants should have known that the deceased had serious medical needs that required medical attention and that the failure to adequately monitor or to provide any medical help constituted being "deliberately indifferent" to the deceased's medical needs. Therefore, the plaintiff's § 1983 action alleging that the defendants deprived the deceased of his constitutional rights under the Fourteenth Amendment to the United States Constitution under color of law by failing to provide him with necessary medical care and treatment while he was in the jail should not have been dismissed. An action under § 1983 is allowed if the plaintiff alleges acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Affirmed in part, reversed in part, and remanded.

1. JUDGMENTS — SUMMARY JUDGMENT — ISSUES OF MATERIAL FACT — COURT RULES.

Summary judgment on the ground that there is no genuine issue as to any material fact is inappropriate if a genuine issue of fact is created when the affidavits, pleadings, depositions, admissions and documentrary evidence, viewed in the light most favorable to the party opposing the motion, might permit inferences contrary to the facts as asserted by the movant; if the undisputed facts, however, allow only one reasonable interpretation, the question becomes a legal one (GCR 1963, 117.2[3]).

2. TORTS — FALSE ARREST.

A plaintiff must show that the arrest at issue was not legal, *i.e.,* without probable cause, in order to prevail in an action charging false arrest or false imprisonment; it is irrelevant whether or not the person arrested could actually have been convicted since actual innocence is not an element of the tort of false arrest.

3. ARREST — PROBABLE CAUSE.

Probable cause to arrest is determined by whether or not the facts available to the police at the moment of arrest would have justified a fair-minded person of average intelligence and judgment in believing that the arrestee had committed a felony.

4. GOVERNMENTAL IMMUNITY — INTENTIONAL TORTS.

Intentional torts are generally not protected by governmental immunity since an intentional tort is not in the exercise or discharge of a governmental function; however, governmental actions which would normally constitute intentional torts are protected by governmental immunity if those actions are justified.

5. ARREST — REASONABLE FORCE.

A police officer may use reasonable force when making an arrest; the measure of necessary force is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary.

6. ARREST — REASONABLE FORCE — HANDCUFFS.

The use of handcuffs by a police officer is not by itself the use of unreasonable force in the making of an arrest.

7. PRISONS AND PRISONERS — MEDICAL CARE — FAILURE TO PROVIDE CARE — CONSTITUTIONAL LAW — UNITED STATES CODE.

An action alleging that members of a police department deprived the plaintiff of his constitutional rights under the Fourteenth Amendment to the United States Constitution under color of law by failing to provide him with necessary medical care and treatment while he was in jail is allowed under a section of the United States Code where the plaintiff alleges acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs (US Const, Am XIV; 42 USC 1983).

8. PRISONS AND PRISONERS — MEDICAL CARE — PHYSICAL NEEDS — PSYCHOLOGICAL NEEDS.

Every prisoner or detainee has a right to receive medical care under circumstances in which a reasonable person would seek medical care; prison or jail authorities must make available a level of medical care reasonably designed to meet the inmate's routine and emergency health care needs; a prisoner or detainee is entitled to have both his physical needs and his psychological needs met.

9. PRISONS AND PRISONERS — MEDICAL CARE.

A two-step test is applied in evaluating a prisoner's or detainee's claim that jail or prison officials failed to provide him necessary medical care and treatment: it requires deliberate indifference on the part of the officials and it requires the prisoner's or detainee's medical needs to be serious; to show deliberate indifference the plaintiff must show either denied or unreasonably delayed access to a physician for diagnosis or treatment of a discomfort-causing ailment, or failure to provide prescribed treatment; a medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.

10. ARREST — JUVENILES — PROBATE COURT.

The statute regarding the arrest of a child under age 17 provides that such a child must be taken immediately before the juvenile division of the probate court of the county where the offense occurred (MCL 764.27; MSA 28.886).

*Quinn & Budaj, P.C.* (by *John P. Quinn*), for plaintiff.

*James A. Kandrevas, P.C.* (by *James A. Kandrevas*), for defendants on appeal.

Before: M. J. KELLY, P.J., and HOOD and SHEPHERD, JJ.

HOOD, J. In this action, plaintiff sued several defendants as the result of the death of her son, Gary Catron, who killed himself while confined at the Southgate City Jail. Plaintiff appeals as of right from a grant of summary judgment in favor of defendants Perrin, Haber, Tims and Sadowski,[1] all of whom are employees of the Southgate Police Department.

At about 3:30 p.m., April 27, 1979, 15-year-old Gary Catron came home drunk and promptly began to fight with his twin brother Terry. After

---

[1] In the rest of this opinion, these four will be referred to as "defendants". The other defendants are not a part of this appeal.

Gary armed himself with a butcher knife, plaintiff, their mother, telephoned the Southgate police for help.

When Officers Tims and Sadowski arrived, Gary, having apparently given up chasing his brother around the neighborhood, was returning home. From about 25 feet, the officers saw that Gary was staggering, bleeding from the mouth (his face was stained with blood), and had a butcher knife sticking out of his back pocket. Although Gary was belligerent and uncooperative, the officers were able to take the knife from him, handcuff him, and place him in the patrol car.

Defendants concede that Tims and Sadowski not only knew that Gary was a juvenile, but also recognized him from his previous contacts with the police. The evidence, however, does not clearly show that they knew either about Gary's particular behavioral problem and history of substance abuse, or that Gary had, at the Southgate Police Department's suggestion, received psychological counseling at the Downriver Guidance Center.

After arresting Gary, the officers talked with plaintiff. She claims that the officers merely asked her whether or not she could handle Gary and that she responded that she could not. The officers then said that they would take Gary into custody and that she could pick him up in about an hour. On the other hand, defendants claim that the officers asked plaintiff what she wanted to do. (Terry was complaining that he was afraid and wanted Gary taken out of the house.) She responded by asking them to arrest Gary. One of the officers told her he would take Gary and hold him at the jail, but that since he was a juvenile, she would have to come down to the jail later.

During the ride to the Southgate police station,

Gary was screaming loudly, kicking at the metal screen which separated him from the officers, cursing them, and challenging them to a fight. He continued to struggle as he was taken from the car to the booking area. In fact, when the handcuffs were removed, Gary began striking the Formica tabletop with his fists and again offered to fight the officers.

Gary was then confined in one of the two segregated cells designated by departmental policy to accommodate juveniles. Each of the two cells in the juvenile detention area has three concrete walls and a front which consists of steel bars and crossbeams. The two cells are separated from the security corridor by a metal door. Although the two cells are equipped with a sound monitoring system, no visual contact is available from the officers' station. The officers in charge must walk down to the juvenile section to check on persons held there.

The jail is equipped with a detoxification cell: a large cell with soft surfaces, no bars, and a large window which allows occupants to be easily observed from the security corridor. Although the detoxification cell was empty, the officers complied with a departmental policy that all juveniles, even if clearly intoxicated, must be housed in the juvenile detention area. Moreover, defendant Sadowski testified at his deposition that the policy required the detoxification cell to be used only for a person either unable to walk or unconscious.

Gary was still combative and belligerent when defendants Tims and Sadowski placed him in his cell. Because during most of his stay in the jail Gary was shouting and screaming so loudly that the noise disrupted the department's work, defendant Haber turned off the sound monitoring system for most of that time.

During the 1-1/2 hours that Gary remained alive in his cell, defendant Haber walked past his cell only once. Gary appeared to be sleeping then (5 p.m.).

About 15 to 30 minutes later, Gary was found to have hanged himself. The suicide had consumed enough time for Gary to rip up his shirt, tie a part of it over the crossbeam and attempt to hang himself, fail because the knot gave, and use a second knot to successfully hang himself. He was pronounced dead on arrival at Wyandotte General Hospital.

Eventually, plaintiff sued. Her complaint contained five allegations: (1) architect's and builder's malpractice, (2) the city's liability for a defective building, (3) false arrest and false imprisonment, (4) assault and battery, and (5) deprival of Gary's constitutional rights in violation of 42 USC 1983. The trial court, however, dismissed the last three of these counts, ruling that no material questions of fact existed. Defendants Perrin, Haber, Tims, and Sadowski were therefore dismissed from the suit.

Plaintiff first argues that the trial court erred in granting summary judgment on the false arrest and false imprisonment count. Summary judgment under GCR 1963, 117.2(3) is inappropriate if a "genuine issue of fact is created when the affidavits, pleadings, depositions, admissions and documentary evidence, viewed in the light most favorable to the party opposing the motion, might permit inferences contrary to the facts as asserted by the movant". *Opdyke Investment Co v Norris Grain Co,* 413 Mich 354, 360; 320 NW2d 836 (1982). However, if the undisputed facts allow only one reasonable interpretation, the question becomes a legal one. *Hammitt v Straley,* 338 Mich 587, 597;

61 NW2d 641 (1953); *Leisure v Hicks,* 336 Mich 148; 57 NW2d 473 (1953).

In order to prevail on this count, plaintiff must show that the arrest was not legal, *i.e.,* without probable cause, *Lewis v Farmer Jack Division, Inc,* 415 Mich 212, 218, fn 2; 327 NW2d 893 (1982); *Filer v Smith,* 102 Mich 98; 60 NW 297 (1894). Probable cause to arrest is determined by whether or not the "facts available to the police at the moment of arrest would have justified a fairminded person of average intelligence and judgment in believing that [the arrestee] had committed a felony". *People v Goeckerman,* 126 Mich App 517, 521; 337 NW2d 557 (1983). See also *Beck v Ohio,* 379 US 89; 85 S Ct 223; 13 L Ed 2d 142 (1964); 1 Wharton's Criminal Procedure (12th ed), § 51, pp 144-145.

Based on the undisputed facts, we can only conclude that defendants did have probable cause to arrest Gary. His mother had earlier telephoned them saying that Gary was assaulting his brother with a knife. When Tims and Sadowski saw him, he was staggering, bleeding, and carrying the knife. Even though Gary was a juvenile, the police had probable cause to arrest him for felonious assault. MCL 750.82; MSA 28.277. Whether or not Gary could actually have been convicted is irrelevant because actual innocence is not an element of the tort of false arrest. *Lewis, supra,* 415 Mich 218, fn 1.

Plaintiff also claims that the trial court erroneously granted summary judgment on the assault and battery count. GCR 1963, 117.2(1). Specifically, plaintiff had alleged that, during the arrest, defendants intentionally and nonconsensually touched Gary. Defendants counter by claiming that they are not liable because of governmental immunity.

Plaintiff is alleging an intentional tort. 2 Michigan Law & Practice, Assault and Battery, § 2, p 529; Prosser, Torts (3d ed), § 10, p 40. As a general rule, intentional torts are not protected by governmental immunity: "[A]n intentional tort [is] not in the exercise or discharge of a governmental function." *Lockaby v Wayne County,* 406 Mich 65, 77; 276 NW2d 1 (1979). See also *Armstead v Jackson,* 121 Mich App 239; 328 NW2d 541 (1981); *Shunk v Michigan,* 97 Mich App 626; 296 NW2d 129 (1980). But at times, the government finds it necessary to do things that would normally be called intentional torts:

"A tort is a civil wrong and conduct which is wrong within one setting can be permissible within another. For example, a police officer may not intentionally strike a citizen peacefully walking down the street, but his duty may require the police officer to intentionally strike another citizen to prevent him from murdering a third peaceful citizen." *Lockaby, supra,* 406 Mich 82 (WILLIAMS, J., *concurring.)*

Governmental actions which would normally constitute intentional torts are protected by governmental immunity if those actions are justified. Conversely, if the actions are not justified, they are not protected by governmental immunity. *Smith v Michigan,* 122 Mich App 340, 344-346; 333 NW2d 50 (1983). Specifically, a police officer may use reasonable force when making an arrest. *Firestone v Rice,* 71 Mich 377; 38 NW 885 (1888); 35 CJS, False Imprisonment, § 25, pp 657-660. Therefore, " 'the measure of necessary force is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary' ". *Barrett v United States,* 62 US App DC 25, 26; 64

F2d 148, 149 (1933). By itself, the use of handcuffs is not unreasonable force. *McCullough v Greenfield,* 133 Mich 463; 95 NW 532; 62 LRA 906 (1903); *Firestone, supra.* Because plaintiff has never alleged that defendants used unreasonable force in arresting Gary, the trial court properly granted summary judgment on this count.[2]

Plaintiff also asks us to reinstate the § 1983 count. In her complaint, she alleged that defendants deprived Gary of his constitutional rights under the 14th Amendment to the United States Constitution under color of law by failing to provide him with necessary medical care and treatment while he was in the jail. Such a cause of action is allowed under § 1983 if the plaintiff alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs". *Estelle v Gamble,* 429 US 97, 106; 97 S Ct 285, 292; 50 L Ed 2d 251, 261 (1976).[3] Every prisoner has the right to receive medical care under circumstances in which a reasonable person would seek medical care. *Rust v Alaska,* 582 P2d 134, 143, fn 34 (Alas, 1978). Prison or jail authorities must make available a level of medical care reasonably designed to meet the inmate's routine and emergency health care needs. *Ramos v Lamm,* 639 F2d 559, 574 (CA 10, 1980), *cert den* 450 US 1041; 101 S Ct 1759; 68 L Ed 2d 239 (1981). A prisoner is entitled not only to have his physical

[2] On remand, plaintiff may amend her complaint on this count.

[3] *Estelle* is an Eighth Amendment case. Because Gary was merely a detainee, the Eight Amendment does not apply. *Bell v Wolfish,* 441 US 520, 535, fn 16; 99 S Ct 1861; 60 L Ed 2d 447 (1979). However, Eighth Amendment analysis provides useful analogies to plaintiff's due process claim; due process protects a detainee from abusive treatment. *Meshkov v Abington Twp,* 517 F Supp 1280, 1284 (ED Pa, 1981). Moreover, "[i]t would be anomalous to afford a pretrial detainee less constitutional protection than one who has been convicted". *Hampton v Holmesburg Prison Officials,* 546 F2d 1077, 1079-1080 (CA 3, 1976).

needs met, but also to have his psychological needs met. *Inmates of Allegheny County Jail v Pierce,* 612 F2d 754 (CA 3, 1979); *Bowring v Godwin,* 551 F2d 44, 47 (CA 4, 1977).

In evaluating a plaintiff's claim of failure to provide necessary medical care and treatment, courts use a two-step test: "It requires deliberate indifference on the part of [the] officials and it requires the prisoner's medical needs to be serious." *West v Keve,* 571 F2d 158, 161 (CA 3, 1978).

*Hendrix v Faulkner,* 525 F Supp 435, 454 (ND Ind, 1981), explained the second of these requirements: "A medical need is serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' *Laaman v Helgemoe,* 437 F Supp 269, 311 (D NH, 1977)." In the present case, we believe that a rational jury could infer from the record that Gary had serious medical needs that should have been recognized by defendants. Plaintiff's expert testified at his depositions that he believed that not only did Gary urgently and immediately need medical treatment while in custody but also that this need must have been sufficiently obvious to the police officers.

We also believe that a jury could reasonably find deliberate indifference on defendants' part. To show this prong of the test, a plaintiff must "show either denied or unreasonably delayed access to a physician for diagnosis or treatment of a discomfort-causing ailment, or failure to provide prescribed treatment". *Todaro v Ward,* 431 F Supp 1129, 1133 (SD NY, 1977). See also *Ramos, supra,* 639 F2d 575.[4]

---

[4] For example, *Franklin v State of Oregon, State Welfare Div,* 662 F2d 1337, 1347 (CA 9, 1981), found that the plaintiff had sufficiently

*Patzig v O'Neil,* 577 F2d 841 (CA 3, 1978), is similar to the present case. There, the deceased had been arrested at about 4:30 a.m. and given a breathalyzer test at 6:07 a.m. (The result was .06%.) Eight minutes later, she was given a medical examination and was then put in a cell with two others. Somewhere between 9 and 9:40 a.m. she was taken out of the cell in order to make a telephone call. Because she refused to go back into her cell after making the call, the defendants placed her in a vacant cell. She then became hysterical and did not calm down for 30 minutes. At 10 a.m. the defendants found that she had hanged herself with her belt. Jail regulations had required that defendants take the belt away from her. Furthermore, although checks were required every 15 minutes by the regulations, the matron had only checked every 30 minutes. The court affirmed the summary judgment and ruled that callousness, not mere negligence, is the proper standard for a § 1983 action: " 'More is needed than a naked averment that a tort was committed under color of state law.' " 577 F2d 848.

For a number of reasons, however, the present case is different. First, even before being arrested, Gary had become so distraught that he had attacked his own twin brother with a butcher knife. He had also been drinking. Alcohol is a depressant. A person sobering up can become quite depressed. Whether or not defendants knew or believed these things is obviously a question of fact, and thus a jury question. Furthermore, the evidence has not foreclosed a consideration of whether or not defendants had actual knowledge of Gary's psychological problems.

---

stated a cause of action when he alleged that, even though he had a throat tumor, he had been put in a cell with a heavy smoker.

Second, MCL 764.27; MSA 28.886 states that a juvenile under 17 must "be taken immediately before the juvenile division of the probate court of the county" where the offense occurred. This, defendants failed to do.[5]

Third, there is evidence that defendants failed to effectively monitor Gary while he was in his cell. Only once did anyone check on him. Moreover, the sound monitoring system was turned off. It could be shown that, at least in part, the monitoring system must have been installed to prevent suicides.[6]

In summary, based on the facts so far developed in this case, we believe that a jury could reasonably conclude (1) that defendants should have known that Gary needed medical attention and (2) that the failure to adequately monitor or to provide any medical help constituted being "deliberately indifferent" to Gary's medical needs.

Affirmed in part, reversed in part, and remanded. No costs, neither side having prevailed in full.

---

[5] At least one case has, however, ruled that the failure to comply with such statute does not in and of itself amount to deliberate indifference. *Wright v Wagner,* 641 F2d 239, 241 (CA 5, 1981). See also *Patzig, supra.*

[6] At least one study indicates that 27% of suicide victims studied were young, white males who were intoxicated when arrested and who committed suicide within three hours of their incarceration. *Final Report to National Institute of Corrections on National Study of Jail Suicides* (1981).