## BUTLER v CITY OF DETROIT

Docket No. 78777. Submitted November 13, 1985, at Detroit.—Decided
    March 17, 1986. Leave to appeal applied for.

Zarak Butler, personal representative of the estate of Dink But-
    ler, brought a wrongful death action in Wayne Circuit Court
    against the City of Detroit and Detroit Police Officer Frederick
    W. Ford, following the fatal shooting of Dink Butler by Officer
    Ford. Plaintiff, in separate counts, alleged that Officer Ford by
    shooting the deceased had committed an unlawful battery upon
    the deceased, had violated the deceased's federally protected
    civil rights and had been negligent. The proofs at the trial,
    Richard C. Kaufman, J., presiding, showed that Officer Ford
    and other officers had been dispatched by radio to a particular
    Detroit address, the dispatcher indicating that several calls had
    been received from a woman at that address screaming about a
    man with a gun and a knife. Officer Ford testified that, after
    speaking briefly with the deceased's girlfriend, the officers
    proceeded to an upstairs flat where a birthday party for the
    deceased was in progress, that he identified himself as a police
    officer, that he entered the apartment and that he was con-
    fronted by the deceased holding a guitar in one hand and a
    butcher knife in the other. Officer Ford further testified that
    the deceased advanced toward him, that the deceased failed to
    obey his order to drop the knife and that he shot the deceased
    two times when the deceased had approached to within two to
    five feet of him with the knife still in the deceased's hand. The
    city stipulated that any judgment against Officer Ford on the

### REFERENCES

Am Jur 2d, Municipal, School, and State Tort Liability §§ 53-68, 90,
    259.
Liability of governmental unit for intentional assault by employee
    other than police officer. 17 ALR4th 881.
Defense of good faith in action for damages against law enforce-
    ment official under 42 USCS § 1983, providing for liability of
    person who, under color of law, subjects another to deprivation of
    rights. 61 ALR Fed 7.
See also the annotations in the ALR3d/4th Quick Index under
    Governmental Immunity or Privilege; Public Officers and Em-
    ployers.

·

battery count would be binding upon it. The jury returned a verdict in favor of plaintiff and against Ford on all three of the counts and awarded $275,000 compensatory damages on each of the three counts. The jury also awarded $25,000 punitive damages on the civil rights claim and found the deceased to be 25 percent comparatively negligent for his own death. Defendants appealed. *Held:*

1. While, as a general rule, persons committing intentional torts are not protected by governmental immunity, the nature of a police officer's duty at times requires that a police officer undertake intentional actions for the protection of the public which would otherwise constitute intentional torts. Such intentional actions, if justified by the circumstances, are subject to the protections provided by the doctrine of governmental immunity.

2. Since the actions of Officer Ford were, under the circumstances, in the discharge of his employment, his battery of the deceased cannot be said to be an *ultra vires* act.

3. Under these circumstances, the decision to shoot the deceased was a discretionary decision. Since that act was also done in the course of Officer Ford's employment and since there was no allegation that Officer Ford was not acting in good faith, Officer Ford is immune from tort liability. Accordingly, the jury verdicts on the negligence and battery claims are reversed.

4. Since any liability on the part of city would arise vicariously out of the actions of Officer Ford and since Officer Ford is immune from tort liability because of the doctrine of governmental immunity, the city is also immune. The fact that the city stipulated to being held liable if Officer Ford was found to have committed a battery does not create liability in the city, since it is clear that the city did not intend to waive the right to assert the defense of governmental immunity.

5. Plaintiff failed to adequately allege or prove that Officer Ford's actions violated the deceased's right to due process or constituted cruel and unusual punishment. Accordingly, the awards, both compensatory and punitive, and judgment based on the 42 USC 1983 civil rights claim must be reversed.

Reversed.

1. GOVERNMENTAL IMMUNITY — GOVERNMENTAL EMPLOYEES.

Lower level officials, such as police officers, are immune from tort liability only when they are acting during the course of their employment and are acting, or reasonably believe they are acting, within the scope of their authority, acting in good faith, and performing discretionary-decisional, as opposed to ministe-

rial-operational acts; under this test, no individual immunity exists for *ultra vires* activities.

2. GOVERNMENTAL IMMUNITY — INTENTIONAL TORTS — POLICE OFFI-
   CERS.

   Persons committing intentional torts, as a general rule, are not protected by governmental immunity; however, it has been recognized that a police officer's duty may, of necessity, require the officer to intentionally strike another individual in order to prevent that person from harming other members of the public; accordingly, actions by police officers which might normally consititute intentional torts are within the scope of governmental immunity if the actions of the police officers are justified.

3. GOVERNMENTAL IMMUNITY — POLICE OFFICERS — ARREST.

   Police officers, especially when faced with a potentially dangerous situation, must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individuals involved and the general public, the cessation of unlawful conduct, and the apprehension of wrongdoers; the determination of what type of action to take is a discretionary-decisional act entitled to immunity; once that decision is made, however, the execution thereof must be performed in a proper manner.

*Harris, Marcks & Mooney, P.C.* (by *John G. Mooney),* for plaintiff.

*Donald Pailen,* Corporation Counsel, *Abigail Elias,* Deputy Corporation Counsel, and *William L. Woodard,* Assistant Corporation Counsel, for defendants.

Before: BEASLEY, P.J., and V. J. BRENNAN and CYNAR, JJ.

V. J. BRENNAN, J. Zarak Butler, as representative of the estate of Dink Butler, Jr., brought the present wrongful death action against the defendants, the City of Detroit and Police Officer Frederick W. Ford, following the fatal shooting of Dink Butler by Officer Ford. The plaintiff alleged that

Officer Ford had committed an unlawful battery, violated the decedent's federal civil rights and had been negligent in the shooting of the decedent. Following a jury trial held in Wayne County Circuit Court on April 16 to April 20, 1984, a verdict was returned against Officer Ford on all three theories, and the jury awarded $275,000 in compensatory damages on each count. The jury also awarded the plaintiff $25,000 in punitive damages against Officer Ford on the civil rights claim and determined that the decedent had been 25 percent comparatively negligent in his own death. The defendants appeal as of right.

The testimony at trial concerning the circumstances surrounding the shooting of Dink Butler was contradictory, but can be summarized as follows. On February 24, 1979, a birthday party was being held at 9449 Prairie in Detroit to celebrate Dink Butler's 48th birthday. Numerous friends and relatives of the decedent were in attendance. Some time during the party, an altercation broke out between Dink Butler and his son Zarak. The cause of the altercation is not clear. It appears that Dink and Zarak started wrestling in jest but that, when Zarak attempted to put some handcuffs on Dink, the altercation became more serious. Initially, the people at the party did not pay any attention to the wrestling because such horseplay was common between Dink and Zarak.

However, as the altercation between Dink and Zarak became more serious, Dink's live-in girlfriend, Loretta Freeman (Strayhorn) became so concerned that she called the police emergency number and requested assistance. Freeman called the police twice more when the police did not immediately respond. Finally, she requested that A. B. Sims, Dink's cousin, break up the fight between Dink and Zarak. According to Sims, while

he was holding down Zarak, Dink attempted to hit Zarak with a guitar and a knife.

At approximately 3:00 a.m., Detroit Police Officers Ford, O'Neil and Schipani were about to end their shift in a cruiser unit when they received a radio run to proceed to 9449 Prairie. The radio dispatcher indicated that several calls had been received from that address and that a woman was screaming about a man with a gun and a knife. Officers Ford and O'Neil were in plain clothes and Officer Schipani was in uniform. When the officers arrived at the Prairie Street address, they were met by a woman who was later identified as Loretta Freeman. According to the officers, Ms. Freeman appeared very upset and was acting hysterically. Ms. Freeman allegedly indicated to the officers that a man upstairs had gone crazy and was armed. However, Ms. Freeman, in her deposition, denied that she was upset or acting hysterically when she met the police at the door.

After speaking briefly to Ms. Freeman, the officers proceeded up the stairway to the upper flat where the party was being held. Officer Ford indicated that he pulled out his service revolver as he was going up the stairs. When Officer Ford arrived at the upstairs landing, he stood in the doorway and identified himself as a police officer. Inside the apartment, he could see Dink Butler standing facing him in the middle of the living room, holding a guitar in one hand and a butcher knife in the other.

Officer Ford testified that Dink Butler advanced toward him holding the knife in a threatening manner, that he immediately told Butler to drop the knife, that Butler continued to advance toward him, that he again told Butler to drop the knife, and that, when Dink Butler got between two and five feet away from him and had still not dropped

the knife, he fired two shots at Butler. Officer Ford further testified that he shot Butler because he feared that Butler was about to injure him. The officers with Officer Ford gave similar testimony concerning the shooting.

The numerous other witnesses who witnessed the shooting provided different testimony as to the events immediately preceding the fatal shooting than was testified to by the officers involved.

The city stipulated that any judgment rendered against Officer Ford on the battery count would be binding upon it.

Our first question is whether defendant Ford, as a Detroit police officer, was entitled to immunity from liability for his alleged battery and negligent shooting of the deceased.

Defendant Ford asserts that the jury's verdict finding him liable for battery and negligence for the shooting of the plaintiff's decedent was contrary to the doctrine of governmental immunity and, therefore, must be reversed.

At trial, Officer Ford's primary defense was that he had shot the deceased in self-defense because of the perceived threat that the deceased presented. The trial court did grant the directed verdict for the City of Detroit on the plaintiff's negligence claim based on a finding that the city was protected by the doctrine of governmental immunity.

Although the issue of individual immunity is not directly dealt with in the governmental immunity act, MCL 691.1401 *et seq.;* MSA 3.996(101) *et seq.,* our Supreme Court in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 633; 363 NW2d 641 (1984), concluded that in order for governmental officials and lower level employees to be free to perform their functions without fear of incurring personal liability, immunity must be accorded to such individuals under certain circumstances.

Lower level officials, such as police officers, are immune from tort liability if, and only if, they are:

"1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;
"2) acting in good faith; and
"3) performing discretionary, as opposed to ministerial acts.
"Under this test, no individual immunity exists for *ultra vires* activities." 420 Mich 633-634 (footnote omitted).

Hence, under *Ross,* defendant Ford would be immune from tort liability for the shooting of the decedent if, and only if, the above cited standards have been satisfied.

According to the plaintiff, Officer Ford is not immune from tort liability because the fatal shooting was without justification and, therefore, beyond the scope of Officer Ford's authority as a police officer (an *ultra vires* act) and because Officer Ford improperly performed a ministerial act when he shot the plaintiff's decedent. The plaintiff did not maintain at trial, nor does he assert on appeal, that Officer Ford acted in bad faith when he shot the deceased. Therefore, because there has been no allegation that Officer Ford acted in a manner other than in good faith, the second requirement of the *Ross* test is satisfied and need not be discussed further. However, the remaining *Ross* standards do require discussion.

Initially, plaintiff asserts that Officer Ford is not immune from tort liability because he was acting outside the scope of his employment because the shooting of the decedent was an *ultra vires* act. However, plaintiff's complaint clearly asserted that at the time of the shooting Officer Ford was acting within the scope of his employment as a

police officer. Plaintiff reasons that the shooting was outside the scope of Officer Ford's employment based on the fact that the jury found him liable for a battery, an intentional tort, and, therefore, the shooting is conclusively deemed unjustified and *ultra vires.* We disagree.

Plaintiff alleged that Officer Ford committed an intentional tort when he shot Dink Butler. As a general rule, persons committing intentional torts are not protected by governmental immunity. *Brewer v Perrin,* 132 Mich App 520, 528; 349 NW2d 198 (1984) (a pre-*Ross* decision). However, it has been recognized that a police officer's duty may, of necessity, require him to intentionally strike another individual in order to prevent that person from harming another citizen. *Lockaby v Wayne County,* 406 Mich 65, 82; 276 NW2d 1 (1979) (WILLIAMS, J., concurring) (a pre-*Ross* decision). Thus, it is recognized that actions by police officers which might normally constitute intentional torts are protected by governmental immunity if those actions are justified. *Brewer, supra,* p 528. Conversely, if the actions are not justified, they are not protected by governmental immunity. *Id.*

It is true in this case that the jury found that Officer Ford committed a battery. We find, however, that the jury's finding that Officer Ford committed a battery does not preclude a finding that, for purposes of the governmental immunity doctrine, he was acting during the course of his employment and that he reasonably believed that he was acting within the scope of his employment. In *Lockaby,* Justice WILLIAMS noted that persons committing intentional torts may be protected by governmental immunity so long as their acts do not constitute *ultra vires* activities and are done within the scope of the official's duties. *Lockaby,*

*supra,* pp 82-83. *Ultra vires* activities have been defined as activities that are unauthorized and outside the scope of employment. *Ross, supra,* p 631.

In this case, it must be concluded that Officer Ford reasonably believed that he was acting within the scope of his authority as a police officer when he shot Dink Butler. Officer Ford responded to the Butler home in response to a hysterical request for assistance. He had been informed that a person with a weapon (gun and/or knife) was threatening others at that address. When Officer Ford entered the apartment, he was confronted by a man with a knife. At that point, within a matter of seconds after entering the apartment, Officer Ford made the decision to shoot the deceased. It is undisputed that Officer Ford possessed the authority to use deadly force under certain circumstances and that he was acting in his official capacity as a police officer when he responded to the scene. Therefore, we hold that, for purposes of the governmental immunity doctrine, Officer Ford was acting in the course of his employment and reasonably believed he was acting within the scope of his employment when he shot Dink Butler. Thus, that aspect of the *Ross* test is satisfied in this case.

The parties disagree on the proper answer to the third prong of the *Ross* test, that being whether Officer Ford was performing a discretionary/decisional, as opposed to a ministerial/operational, act. To be afforded immunity, it must be found that Officer Ford was performing a discretionary act when he shot the deceased.

Discretionary acts were defined by the Court in *Ross* as those acts which require personal deliberation, decision and judgment. The term does not encompass every trivial decision, such as decisions involving the performance of an activity. *Ross,*

*supra,* p 634. Ministerial acts, on the other hand, were defined as those acts which constitute merely obedience to orders or the performance of a duty in which the individual has little or no choice. "An individual who decides whether to engage in a particular activity and how best to carry it out engages in discretionary activity. However, the actual execution of that decision by the same individual is a ministerial act, which must be performed in a non-tortious manner." *Ross, supra,* pp 634-635.

Concerning the application of the discretionary/ministerial act distinction to the actions of police officers, the Supreme Court in *Ross* stated:

"Police officers, especially when faced with a potentially dangerous situation, must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individuals involved and the general public, the cessation of unlawful conduct, and the apprehension of wrongdoers. The determination of what type of action to take, *e.g.,* make an immediate arrest, pursue a suspect, issue a warning, await backup assistance, etc., is a discretionary-decisional act entitled to immunity. Once that decision has been made, however, the execution thereof must be performed in a proper manner, *e.g.,* the arrest must be made without excessive force, the pursuit of the suspect must not be done negligently, the request for assistance must include reasonably accurate information, etc." *Ross, supra,* pp 659-660.

Plaintiff asserts that Officer Ford is liable for the fatal shooting of the deceased because his acts constituted an improper performance of a ministerial act. According to the plaintiff, the decisions made by Officer Ford to investigate the scene and to apprehend Butler were discretionary acts for which no liability could attach. However, the actual apprehension of Butler and the decision to

shoot was, according to plaintiff, a ministerial/operational act which Officer Ford performed in a tortious manner by using excessive force and, therefore, he could properly be held liable.

We find the plaintiff's partitioning of Officer Ford's actions to be untenable in this case. It was generally conceded in *Ross* that a police officer's use of excessive force in effectuating an arrest is a ministerial act and not entitled to the cloak of immunity. Plaintiff's position at trial was that Officer Ford had used excessive force when he confronted Dink Butler. Plaintiff attempts to argue that Officer Ford's actions in shooting Butler were ministerial by suggesting that every decision up until the point where Officer Ford shot Butler was discretionary. Plaintiff views the act of shooting Butler, however, as merely the carrying out of a decision. We are of the opinion that the shooting cannot be so simply characterized.

Officer Ford responded to what he understood to be a potentially dangerous situation and was confronted by a man with a knife. In assessing the situation and deciding the appropriate method of response, Officer Ford was performing a discretionary as opposed to a ministerial act.

Based on the total facts presented, we conclude that Officer Ford was performing a discretionary/decisional act when he shot Dink Butler and, therefore, is immune from tort liability. Accordingly, the jury verdicts in favor of the plaintiff must be reversed based on this finding of immunity.

The next question presented is whether the City of Detroit is entitled to governmental immunity from any vicarious liability arising out of a shooting committed by one of its police officers.

The *Ross* Court noted:

" 'A municipal corporation may, however, be liable for an unlawful and unauthorized act of one of its officers or agents if the act was done in the course of his official duty or employment, and within the general scope of his authority.' 57 Am Jur 2d, Municipal, School, and State Tort Liability. § 88, pp 99-100." 420 Mich 624.

In the present case, the City of Detroit asserts that it could not be held vicariously liable for the actions of Officer Ford based on the doctrine of governmental immunity. We determined above that Officer Ford enjoyed immunity from tort liability for the shooting of the deceased. The issue of vicarious liability of the city need not be determined because there is no liability upon which to base the city's vicarious liability.

In this case, the City of Detroit stipulated at trial that it would be vicariously liable for any damages if the jury found that Officer Ford committed a battery against the decedent. Thus, plaintiff argues that, because of the stipulation, the city should be estopped from asserting the defense of governmental immunity on appeal. We do not agree. The stipulation made by the city does not reveal any intention to give up its right to assert governmental immunity. The city apparently felt that there was no reason to give vicarious liability instructions to the jury because the principal defense at trial was that Officer Ford was justified in the shooting of Dink Butler. Therefore, because there was no clear intention to waive the right to assert the defense of immunity, we would find that the city's stipulation does not bar it from arguing the issue of immunity on appeal.

We find that, based on the facts of this case, neither defendant was liable to plaintiff because each defendant was immune under the doctrine of governmental immunity.

The judgments below involving the battery and negligence claims are, therefore, reversed.

Although defendants assert for the first time on appeal that plaintiff's claim for the alleged deprivation of the decedent's civil rights under 42 USC 1983 cannot be maintained, we find it necessary to address the issue, in the interests of justice, for full resolution of the instant appeal.

The plaintiff alleged and sought to prove at trial that the defendant officer, while acting under color of law, deprived plaintiff's decedent of due process of law as generally guaranteed by the Fourteenth Amendment and that the officer's actions constituted cruel and unusual punishment under the Eighth Amendment. Plaintiff, however, did not proceed on the theory that the alleged due process violation was a substantive right which arose under the Fourth Amendment. The case was neither pleaded nor tried as a claim arising under the Fourth Amendment.

"In *Tennessee v Garner,* — US —; 105 S Ct 1694, 1699; 85 L Ed 2d 1 (1985), the Supreme Court wrote, 'there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment. If there is an unreasonable seizure, it violates the Fourth Amendment which is made applicable to the states by the due process clause of the Fourteenth Amendment. As such, it is a substantive due process violation.' " *Wilson v Beebe,* 770 F2d 578, 586 (CA 6, 1985).

In our opinion, on the authority of *Ingraham v Wright,* 430 US 651, 664; 97 S Ct 1401; 51 L Ed 2d 711 (1977), the allegations of an alleged civil rights deprivation involving the Eighth Amendment should have initially been dismissed.

"The Eighth Amendment provides: 'Excessive bail

shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' Bail, fines, and punishment traditionally have been associated with the criminal process, and by subjecting the three to parallel limitations the text of the Amendment suggests an intention to limit the power of those entrusted with the criminal-law function of government. An examination of the history of the Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of *crimes.*" (Emphasis added.)

The *Ingraham* Court also stated:

"These decisions [of the Supreme Court] recognize that the Cruel and Unusual Punishments Clause circumscribes the criminal process in three ways: First, it limits the kinds of punishment that can be imposed on those convicted of crimes; * * * second, it proscribes punishment grossly disproportionate to the severity of the crime; * * * and third, it imposes substantive limits on what can be made criminal and punished as such * * *. We have recognized the last limitation as one to be applied sparingly. 'The primary purpose of [the Cruel and Unusual Punishments Clause] has always been considered, and properly so, to be directed at the method or kind of punishment, imposed for the violation of criminal statutes * * *.' *Powell v Texas,* [392 US 514, 531-532, 88 S Ct 2145; 20 L Ed 2d 1254 (1968)] (plurality opinion)." 430 US 667.

Since the case should not have proceeded as an Eighth Amendment claim, and no Fourth Amendment claim was pled or tried, we must then inquire whether plaintiff "proved a case which fits the other prong of substantive due process-official acts which 'may not take place no matter what procedural protections accompany them' ". *Wilson v Beebe,* 770 F2d 586. As explained by the *Wilson* court, there "is a substantive due process right akin to the 'fundamental fairness' concept of pro-

cedural due process". *Id.* Applying the "shocks the conscience test" as described in *Wilson v Beebe, supra,* to the facts and evidence presented in this case, we find that the plaintiff had failed to establish a cause of action under 42 USC 1983. The complained-of official conduct does not "shock the conscience" of this Court nor does it "offend those canons of decency and fairness which express the notions of justice of English speaking peoples even towards those charged with the most heinous crimes". *Wilson v Beebe,* 770 F2d 586.

Accordingly, because plaintiff failed to establish a cause of action under 42 USC 1983, we reverse the judgment and award of damages against defendant on the § 1983 claim and we reverse the award of punitive damages on the § 1983 claim as well.

Reversed for entry of judgment for defendants.